176 N.J. Super. 566 (1980)
424 A.2d 441
COMMISSIONERS OF FIRE DISTRICT NO. 9, ISELIN, WOODBRIDGE, N.J., A MUNICIPAL CORPORATION, PLAINTIFF-APPELLANT,
v.
AMERICAN LA FRANCE, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted December 1, 1980.
Decided December 24, 1980.
*569 Before Judges ALLCORN, KOLE and PRESSLER.
Foley & Gazi, attorneys for appellant (Francis C. Foley, on the brief).
Clapp & Eisenberg, attorneys for respondent (Howard G. Katz, of counsel and on the brief).
The opinion of the court was delivered by KOLE, J.A.D.
On August 3, 1979 plaintiff municipality filed a complaint alleging that it had purchased a new fire truck from defendant on November 24, 1974, that defendant warranted that the paint job was in good condition and that the warranty was breached. It sought damages for the money plaintiff would have to expend to have the truck repainted. Defendant claimed that the breach of warranty was barred by the four-year statute of limitations under N.J.S.A. 12A:2-725[1] and moved for summary judgment on that ground. The summary judgment motion was granted.
The judge determined that the four-year statute of limitations commenced to run no later than January 8, 1975, at which time plaintiff had clearly accepted the truck and the paint job either conformed with or violated the warranty; that there was no guaranty of future performance which would have postponed the limitations period, and that there was no showing of acts by defendant that could estop it from asserting the statute of limitations. He thus held that since the four-year limitation *570 period had expired on January 8, 1979, plaintiff's claim for breach of warranty, filed August 3, 1979, was barred. Plaintiff appeals.
The facts as revealed by the record on the summary judgment motion were to the following effect.
Defendant was the successful bidder in connection with the sale to plaintiff of the fire truck. It delivered the truck to plaintiff in September or November 1974. Almost immediately plaintiff realized that the paint job on the truck was defective and notified defendant of this condition. Defendant then arranged for corrective paint work to be done by an independent contractor. This work was accomplished by November 15, 1974 at a cost of $3,033.60 to defendant.
On November 20, 1974 plaintiff signed a "conditional acceptance" for the truck "pending shortages and adjustments." Plaintiff informed defendant by letter of September 10, 1975 that "all shortages and discrepancies were completed by [defendant] on Wednesday, January 8, 1975 and the vehicle was put into service on that date." Plaintiff stated that the purpose of the letter was "[t]o make sure we are in agreement on the date from which [defendant's] warranty was to begin."
By letter dated August 6, 1975 to defendant, plaintiff requested that a date be set to have several defects corrected, which were claimed to be covered by the warranty and the bid proposal. One of the defects was said to be that "[p]aint is rusting in certain places." Defendant responded by letter of August 11, 1975 that its Mr. Byrnes would "be in contact with you to discuss arrangements for correcting the difficulties mentioned in your letter." The letter also stated that the warranty "covers parts only during the warranty period." There is no indication in the record that defendant thereafter attempted to correct the paint defects.
By letter of October 22, 1975 plaintiff requested defendant to "acknowledge that your records show January 8, 1975 as the date for the beginning of the warranty period." Plaintiff stated *571 that it wished to "make sure" that it and defendant "are in agreement on the in service date of the warranty period," which "is for one ... year and was outlined in our specifications and provided in your bid." On November 4, 1975 defendant sent an acknowledgment to plaintiff that the warranty extended to January 8, 1976 but reiterated that it "covered parts only."
On November 15, 1978 plaintiff's attorney notified defendant that the paint job was defective and an estimate of $7,500 had been received for repainting. He suggested an amicable adjustment, which if not effected, would result in a "suit."
According to the certification of plaintiff's attorney, on March 23, 1979 defendant's Mr. Stoner informed him by phone of the "position of the company" but indicated that the company was amenable to further adjustments without suit. However, by letter of April 3, 1979 defendant's Stoner informed plaintiff's attorney that a paint warranty was no longer possible since the unit was over four years old and defendant had already paid over $3,000 for corrective paint work in November 1974; that since it had treated plaintiff fairly and the unit was "out of warranty for excessive time," the claim could not be approved but that it would still try to help in any way that was "practically possible to remedy the situation fairly." In his certification plaintiff's attorney asserted that negotiations continued thereafter but no settlement could be reached and thus this action was instituted on August 3, 1979.
The statute of limitations problem here involves a proper interpretation, as applied to the facts of this case, of the following provisions of N.J.S.A. 12A:2-725:
(1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.
(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered. ....

*572 (4) This section does not alter the law on tolling of the statute of limitations.
The first issue is whether the cause of action for the breach of warranty accrued when the breach occurred  when tender of delivery was made  or when the breach was or should have been discovered. Except for a warranty explicitly extending to future performance of the fire truck, the cause of action for breach of warranty accrues when tender of delivery is made. The latter date appears to be some time in November 1974, or assuming an effective delivery when the further period of warranty was agreed upon in January 1975, as the judge seems to have indicated, the accrual date would be January 8, 1975. In either event, the action started in August 1979 would be barred by the four-year statute of limitations.
On the other hand, if the warranty explicitly extended to future performance of the truck, the four-year limitations period did not begin to run until the breach  the paint defect  was or should have been discovered by plaintiff, provided the defect arose within the warranty period. See, Standard Alliance Ind. v. Black Clawson Co., 587 F.2d 813, 821 (6 Cir.1978), cert. den. 441 U.S. 923, 99 S.Ct. 2032, 60 L.Ed.2d 396 (1979). If such discovery date was within four years prior to August 3, 1979, this action would not be time barred; contrariwise, if that date were more than four years before August 3, 1979.
We decide the basic legal issue projected by this appeal for the guidance of the trial judge, with the admonition that the application of these principles must await an evidentiary hearing and findings based thereon. So far as we are aware, the matter that we now decide is a novel one in this State  i.e., what constitutes a warranty which explicitly extends to future performance of the goods under N.J.S.A. 12A:2-725(2)?
In this case there are two warranties.
The warranty relied on by defendant and which appears to have been part of its contract with plaintiff, despite the bidding specifications, is entitled "Apparatus Warranty." Essentially it constitutes a "conditional" warranty for a period of *573 one year from date of delivery involving only a remedy  i.e., repair or replacement related to defective material or workmanship. This type of warranty is not one that explicitly extends to future performance of the goods. See, Grand Island School Dist. v. Celotex Corp., 203 Neb. 559, 279 N.W.2d 603, 609 (Sup.Ct. 1979); Centennial Ins. Co. v. General Elec. Co., 74 Mich. App. 169, 253 N.W.2d 696, 697 (Ct.App. 1977); Owens v. Patent Scaffolding Co.  Div. of Harsco, 77 Misc.2d 992, 354 N.Y.S.2d 778, 784-785 (Sup.Ct. 1974), rev'd on other gds., 50 App.Div.2d 865, 376 N.Y.S.2d 946 (1975) and 50 App.Div.2d 866, 376 N.Y.S.2d 948 (1975). Cf. Herbstman v. Eastman Kodak Co., 68 N.J. 1, 11-12 (1975). But see, Standard Alliance Ind. v. Black Clawson Co., supra, 587 F.2d at 821, including n. 17.
On the other hand, the warranty that appears to be set forth in the bid specifications (hereafter "the specifications warranty") in our view is an explicit guaranty of future performance of the truck for one year from the date of acceptance of delivery or "if the manufacturer prescribes a warranty of greater duration, the latter time period ..." From the record it appears that the specifications warranty provided that the
... bidder guarantees that the item is of first quality throughout and complies in all respects to the standards regularly sold by the manufacturer in the lines ordered. All items to be guaranteed for one year after date of acceptance or if the manufacturer prescribes a guarantee of greater duration, the latter time period of the guarantee will control.
The key requirement in finding a warranty of future performance is that it makes specific reference to a future time  here, a period of at least one year. This type of warranty cannot be characterized as a mere representation of the product's condition at the time of delivery rather than its performance at a future time. Additionally, unlike a warranty to repair or replace, such warranty does not assume that the product will not perform and will need repair or replacement. See, Standard Alliance Ind. v. Black Clawson Co., supra, 587 F.2d at 821; Holdridge v. Heyer-Schulte Corp. of Santa Barbara, 440 F. Supp. 1088, 1103 (N.D.N.Y. 1977); U.S. Industries, Inc. v. Mitchell, 148 Ga. App. 770, 252 S.E.2d 672 (Ct.App. 1979), reh. den., 148 Ga. App. *574 at 771, 252 S.E.2d 672 (1979); Grand Island School Dist. v. Celotex Corp., supra; Owens v. Patent Scaffolding Co.  Div. of Harsco, supra, 354 N.Y.S.2d at 784-785; Mittasch v. Seal Lock Burial Vault, Inc., 42 App.Div.2d 573, 344 N.Y.S.2d 101, 103 (1973); Rempe v. General Electric Co., 28 Conn.Sup. 160, 254 A.2d 577, 578 (Super.Ct. 1969). See also, John H. Sills & Sons v. Bridgeton Condensed Milk Co., 43 F.2d 72, 73 (3 Cir.1930); White and Summers, Uniform Commercial Code (2 ed. 1980), § 11-9 at 419. Compare, Binkley Company v. Teledyne Mid-America Corporation, 333 F. Supp. 1183, 1186-1187 (E.D.Mo. 1971), aff'd 460 F.2d 276 (8 Cir.1972).[2]
Since public bidding is involved, we hold that the specifications warranty must govern in the instant case and that any attempt by defendant to limit or vary plaintiff's rights under that warranty is without legal effect, including its endeavor to assert, with respect to the extension of the warranty period to January 8, 1976, that the warranty covered only parts or repairs. See, Hillside Tp. v. Sternin, 25 N.J. 317, 324-325 (1957); Armitage v. Newark, 86 N.J.L. 5 (Sup.Ct. 1914).
Thus the factual questions that must be determined at an evidentiary hearing before the statute of limitations defense may be decided are the following: (1) Were the actual terms of the specifications warranty substantially the same as those set forth in this opinion? (2) If so, and the defect occurred during the warranty period ending January 8, 1976, when after January 8, 1975 was it discovered or should it have been discovered by plaintiff  was it August 6, 1975, as plaintiff claims, or some other date?
It should be noted that N.J.S.A. 12A:2-725(1) prohibits the parties by "the original agreement" from extending the period of limitations beyond four years after the cause of action *575 has accrued. (Emphasis supplied.) But here any effective extension of the warranty period or the time for accrual of the cause of action for a breach of warranty would have been by a subsequent agreement or understanding of the parties. It thus is not violative of this statutory provision.
We are not as convinced as the trial judge that the record before him on the summary judgment motion was such that no genuine issue of material fact was projected on the matter of defendant's being estopped from asserting the statute of limitations defense. See, Biocraft Laboratories, Inc. v. USM Corporation, 163 N.J. Super. 570, 573 (App.Div. 1978); Fablok Mills v. Cocker Mach. Co., 125 N.J. Super. 251, 262-263 (App.Div. 1973), certif. den. 64 N.J. 317 (1973). The estoppel question should also be explored and determined at the hearing to be held pursuant to our remand.
The judgment dismissing the complaint and granting summary judgment in favor of defendant is reversed. The matter is remanded to the trial court for an evidentiary hearing in accordance with this opinion. We do not retain jurisdiction.
NOTES
[1] This is part of the Uniform Commercial Code.
[2] See generally Annotation, "What Constitutes Warranty Explicitly Extending to `Future Performance' For Purposes of U.C.C. § 2-725(2)," 93 A.L.R.3d 690 (1979).