**TELE–RADIO SYSTEMS LIMITED, a Canadian corporation, Plaintiff,**

v.

**De FOREST ELECTRONICS, INC., a New Jersey corporation, and Dumont Oscilloscope Laboratories, Inc., a New Jersey corporation, Defendants.**

Civ. A. No. 80–4003.

United States District Court, D. New Jersey.

July 31, 1981.

Bernstein, Schocket & Krieger, by Lewis L. Krieger and Robert A. Marks, Newark, N. J., for plaintiff.

Greenberg, Dauber & Epstein, by Melvin Greenberg, Newark, N. J., for defendants.

## OPINION

CLARKSON S. FISHER, Chief Judge.

This case is before me on plaintiff's motion for an order compelling defendants to produce certain documents, pursuant to Fed.R.Civ.P. 37(a)(4), and on defendants' cross motion for summary judgment on the ground that the action is barred by the four-year statute of limitations for the sale of goods set forth in N.J.S.A. 12A:2–725.

Plaintiff, Tele-Radio Systems Limited (Tele-Radio), filed the complaint herein against De Forest Electronics, Inc. (De Forest) and Dumont Oscilloscope Laboratories, Inc. (Dumont) on December 12, 1980, seeking damages for alleged breach of contract, and express and implied warranties of merchantability. During April or May 1976, Tele-Radio and De Forest entered into an agreement which included De Forest's sale and plaintiff's purchase and distribution of an electronic testing device, the MM200 digital multimeter. The agreement provided that plaintiff was to become the sole distributor of the product in Canada, and was to purchase 1,000 units at the minimum, upon inspection and testing of an initial order of twenty units. The franchise agreement also required De Forest to furnish various technical, promotional, and advertising materials and services. The parties are not in agreement as to the date of execution of the contract or the precise terms of the contract.

Despite defects and specification deviations found in its initial investigation of the twenty units shipped in July and August 1976, Tele-Radio chose to proceed with the agreement and take delivery of the remainder of the 1,000 units. Thereafter, 550 units were received as follows: (1) September 14, 1976—50 units; (2) October 2, 1976 —50 units; (3) November 12, 1976—75

units; (4) November 17, 1976—50 units; (5) November 30, 1976—75 units; (6) December 21, 1976—100 units; and (7) January 31, 1977—150 units. Plaintiff's Answers to Defendants' First Set of Interrogatories at ¶ 14.

On February 7, 1977, Tele-Radio was advised by Philips Electronics, Ltd. (Philips) that Philips was the registered owner of the trademark "De Forest" in Canada, and that Tele-Radio's advertisement of a multimeter under the "De Forest" trademark was an infringement of Philip's rights. Philips asked that Tele-Radio "immediately cease all such infringement." Plaintiff's Brief in Opposition to Defendants' Motion, Exhibit 18. As a result of communication between De Forest and Tele-Radio informing of this complaint, an agreement was reached in which De Forest allegedly agreed to privately label, at no extra cost to Tele-Radio, the MM200 so that the unit would be sold under the Tele-Radio logo only, with no reference at all to De Forest.

Alleging that it never received the new logos as agreed upon by the parties, and further that the multimeters were not manufactured in accordance with written specifications, in breach of the agreement and express and implied warranties, Tele-Radio returned 442 units to De Forest. Tele-Radio contends that, while tender was accepted by defendant, De Forest refused to give plaintiff a cash credit of $30,777.72. Plaintiff seeks return of this amount as well as other damages in its complaint filed on December 12, 1980.

A. Motion for Summary Judgment

Defendants contend that the four-year statute of limitations for contracts for the sale of goods, pursuant to N.J.S.A. 12A:2–725, bars plaintiff from bringing this action for goods received before December 12, 1976. Plaintiff argues that the first count of its complaint alleges breach of a distributorship agreement, and that such agreement is collateral or ancillary to the contract for the sale of goods and therefore not governed by N.J.S.A. 12A:2–725, but rather the general six-year-limitations period for contract actions. In the alternative, plaintiff contends that defendants are estopped by their conduct from asserting the bar of N.J.S.A. 12A:2–725.

To earn summary decision, a party must merit judgment as a matter of law upon genuinely indisputable material facts. Fed.R.Civ.P. 56(c). Only a clear showing of authentic nondispute will satisfy the Rule 56(c) standard, which demands the absence of triable fact issues. *Ely v. Hall's Motor Transit Co.*, 590 F.2d 62, 66 (3d Cir. 1978). The movant bears this burden. *Manetas v. International Petroleum Carriers, Inc.*, 541 F.2d 408, 413 (3d Cir. 1976). The opposing party receives the benefits of all reasonable doubts and inferences drawn from underlying facts. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977); *Cinema Service Corp. v. Twentieth Century-Fox Film Corp.*, 477 F.Supp. 174, 175 (W.D.Pa.1979). A disfavored motion, summary judgment should only issue when the movant demonstrates a clear, uncontestable right to judgment, and the opponent is not entitled to judgment under any circumstances. *Ledwith v. Douglas*, 568 F.2d 117, 119 (8th Cir. 1978). The record must be adequate for determination of the legal questions raised; a deficient factual foundation cannot support summary resolution. 6 Moore's Federal Practice ¶ 56.15 at 609 (2d ed. 1980). The slightest doubt as to the facts precludes granting the motion. *Tomalewski v. State Farm Life Insurance Co.*, 494 F.2d 882, 884 (3d Cir. 1974).

In pertinent part, N.J.S.A. 12A:2–725 provides:

(1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued...

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such

performance the cause of action accrues when the breach is or should have been discovered.

. . . .

(4) This section does not alter the law on tolling of the statute of limitations. . . .

However, N.J.S.A. 12A:2–701 makes it clear that "[r]emedies for breach of any obligation or promise collateral or ancillary to a contract for sale are not impaired" by the provisions of Article 2 of the Uniform Commercial Code.

■■■ In determining whether a contract is for the sale of goods, and thus covered by the UCC, I must examine the whole transaction between the parties and look to the " 'essence' or main objective of the parties' agreement." *Dynamics Corp. of America v. International Harvester Co.*, 429 F.Supp. 341, 346 (S.D.N.Y.1977). *See also Belmont Industries, Inc. v. Bechtel Corp.*, 425 F.Supp. 524, 528 (E.D.Pa.1976). Where the sale of goods is incidental to the basic purpose of a contract, the general statute of limitations on contracts will apply rather than the UCC statute of limitations. *Triangle Underwriters, Inc. v. Honeywell, Inc.*, 604 F.2d 737, 742 (2d Cir. 1979); *Cleveland Lumber Co. v. Proctor & Schwartz, Inc.*, 397 F.Supp. 1088, 1091 (N.D.Ga.1975). Where a contract contemplates services as well as the sale of goods, the "contract remains one for sale if those services were 'merely incidental or collateral to the sale of goods.' " *Triangle Underwriters, Inc. v. Honeywell, Inc.*, 604 F.2d at 743.

■■ Viewing the evidence on this motion for summary judgment in the light most favorable to plaintiff, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970), I cannot grant defendants' motion at this time. The exact nature of the contractual relationship between the parties cannot be determined on the basis of the record before me. A genuine issue of material fact exists as to whether or not in essence the franchise agreement between the parties is one for the sale of goods and therefore governed by the four-year-limitations period of N.J.S.A. 12A:2–725. Similarly, whether defendants' conduct equitably bars their assertion of the statute of limitations as a defense should not be decided on this motion for summary judgment. *Biocraft Laboratories, Inc. v. USM Corporation*, 163 N.J. Super. 570, 573, 395 A.2d 521 (App.Div. 1978).

### B. Motion to Compel Production of Documents

Plaintiffs move for an order compelling defendants to produce certain documents which would establish the relationship between De Forest and Dumont.[1] Defendant objects to the production of such documents on the grounds that they are neither relevant nor material to the matters at issue. Further, with regard to item 2, defendants argue that the confidentiality of income tax returns precludes plaintiff from obtaining

---

1. Defendant refused to permit inspection and copying of the following:

1. The corporate minute book, stock book and stock transfer ledger for De Forest Electronics, Inc. (herein "De Forest") and Dumont Oscilloscope Laboratories, Inc. (herein "Dumont").

2. Federal corporate income tax returns covering the period 1975 through 1980 for De Forest and Dumont.

3. Year-end financial statements, whether or not prepared by independent corporate accountants, for the period 1975 through 1980 for De Forest and Dumont.

. . . . .

5. Records, including but not limited to purchase orders, invoices, acknowledgements, shipping documents, warranty documents, payment records, and the like, referring, relating to or describing the resale of the MM200's returned by plaintiff and subsequently resold by the defendants.

. . . . .

7. All documents reflecting the price Dumont charged De Forest for the manufacture of the MM200's, including but not limited to invoices, sales ledgers, payment records, bill of materials, and the like. (See Transcript of Deposition of John Carter, Jr., at pp. 131–132)

8. All documents relating, referring to or describing the charges for expenses and allocations thereof between De Forest and Dumont, for the period 1975 through December, 1980. (See Transcript of Deposition of John Carter, Jr., at pp. 39, 40, 43 and 44)

them through discovery on the facts of this case.

 Fed.R.Civ.P. 26(b)(1) contains the general provisions governing the scope of discovery, "unless otherwise limited by order of the court":

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things, and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Courts have construed this rule liberally, creating a broad vista for discovery "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978). The party resisting discovery has the burden of clarifying and explaining its objections and to provide support therefor. *Gulf Oil Corp. v. Schlesinger*, 465 F.Supp. 913, 916–17 (E.D. Pa.1979); *Robinson v. Magovern*, 83 F.R.D. 79, 85 (E.D.Pa.1979).

Tele-Radio asserts damage claims against De Forest and Dumont. Plaintiff seeks to establish that De Forest is an instrumentality or agent of Dumont for purposes of satisfying a judgment. I find unpersuasive defendants' argument that, since plaintiff has yet to receive a judgment, it is not entitled to inquire into these documents. Given the broad vista for discovery on "any issue that is or may be in the case," *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. at 351, 98 S.Ct. at 2389, defendants are ordered to produce the documents sought in requests numbered 1, 3, 5, 7, and 8.

Defendants are not required to produce their federal corporate income tax returns covering the period from 1975 through 1980. While tax returns do not enjoy an absolute privilege from discovery, *St. Regis Paper Co. v. United States*, 368 U.S. 208, 219, 82 S.Ct. 289, 296, 7 L.Ed.2d 240 (1961), a "public policy against unnecessary public disclosure arises from the need, if the tax laws are to function properly, to encourage taxpayers to file complete and accurate returns." *Premium Service Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225 (9th Cir. 1975); *Wiesenberger v. W. E. Hutton & Co.*, 35 F.R.D. 556, 557 (S.D.N.Y. 1964). Unless "clearly required in the interests of justice, litigants ought not to be required to submit such returns as the price for bringing or defending a lawsuit." *Id.* Where, as here, the information sought is otherwise available, and defendants have not made their income an issue in the case, the income tax returns are not properly discoverable. *Id.* See also *Payne v. Howard*, 75 F.R.D. 465, 470 (D.D.C.1977).

Defendants' motion for summary judgment is denied. Plaintiff's motion to compel the production of documents is granted with the exception of item 2. Plaintiff will submit an order within ten days. No costs.