282 N.J. Super. 230 (1995)
659 A.2d 948
NORMAN DOCTEROFF AND CORINA DOCTEROFF, PLAINTIFFS-APPELLANTS,
v.
BARRA CORPORATION OF AMERICA, INC., BRAAS SYSTEMS, INC. AND "JOHN DOE," DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 18, 1995.
Decided June 21, 1995.
*232 Before Judges STERN, KEEFE and HUMPHREYS.
Jeffrey Barton Cahn argued the cause for appellants (Sills Cummis Zuckerman Radin Tischman Epstein & Gross, attorneys; Mr. Cahn, of counsel and on the brief and reply brief; Joshua D. Goodman, on the brief and reply brief).
Jeffrey M. Garrod argued the cause for respondents (Orloff, Lowenbach, Stifelman & Siegel, attorneys; Mr. Garrod, of counsel; David B. Katz, on the brief).
The opinion of the court was delivered by STERN, J.A.D.
Plaintiffs claimed that their roof leaked and was in need of repair before the expiration of a written five-year guarantee. After defendant Barra Corporation of America (Barra) declined to remedy the problem, plaintiffs commenced this action. The trial judge granted summary judgment on the ground that plaintiffs' suit was barred by the four-year statute of limitations in the Uniform Commercial Code (UCC), N.J.S.A. 12A:2-725. Plaintiffs appeal.
*233 We agree with the motion judge that this case is governed by the four-year UCC statute of limitations, N.J.S.A. 12A:2-725, and not the six-year statute governing contract claims, N.J.S.A. 2A:14-1. However, the warranty here explicitly extended to future performance and therefore under the circumstances the statute of limitations did not begin to run until the breach was or should have been discovered. See N.J.S.A. 12A:2-725(2).
The facts are unclear as to whether this suit was brought within four years after the breach was or should have been discovered. Hence, summary judgment should not have been granted in favor of the defendant guarantor.

I.
Plaintiffs purchased their home on January 17, 1985. The roof had been installed in the fall of 1981 by the prior homeowners. Barra had supplied the roofing material to the installing contractor, and gave the owner, Helene Kessler, a written five-year "Guarantee" dated November 3, 1981.[1] The "Guarantee" stated, in part:
Barra Corporation of America (hereinafter Barra) guarantees that Braas Rhenofol plastic roof sheets, roof covers and Braas Rhenofol roofing system accessories will maintain the roof of the following structure:

Kessler Residence
[address]
In a watertight condition at Barra's expense for (5) five years from the date hereof.
........
This guarantee covers only those defects occurring during the term of the guarantee and which defects are due to defective Brass Rhenofol material and/or Braas Rhenofol roofing systems accessories, or which defects originate from defective workmanship. It shall be at Barra's obligation to repair such defects or, at Barra's option, replace such defective material at no charge to the owner for labor and material. Any such repair or replacement shall be done by a licensed Barra applicator.
........

*234 THIS GUARANTEE IS IN LIEU OF ALL OTHER WARRANTIES OR GUARANTEES WHETHER EXPRESSED OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.
[(Emphasis added.)]
For purposes of our review of the grant of summary judgment, we must accept plaintiffs' factual contentions. Plaintiffs assert that, upon discovery of the roof leaks, they first notified Barra by telephone on September 17, 1985, and notified it on numerous occasions thereafter. When defendants' attempts to fix the roof failed to remedy the problem, plaintiffs hired an independent roofing expert who reported in June 1986 that there were various "problems" which would fall under the "manufacturer[']s warranty," including "[f]asteners are above the roof plane in various areas," "[m]etal splicing is severely bridging and in some areas cracking," and "[m]echanical terminations are missing from wall details." "Membrane failure" and "[m]etal failure" were also noted. This expert attributed no reason or cause for these "items of major concern," and concluded:
The repairs ... recommended are fairly extensive and in [our] estimation would entail reroofing 30% of the roof area.

This roof[']s usable life is coming to a close[. O]ver the course of time problems will [c]ertainly occur at an accelerated rate[. T]his roof should be replaced in the next 2 years.

Above stated repairs would certai[]nly extend that usable life.
[(Emphasis added.)]
Plaintiffs acknowledge that Barra "patched" the roof on three occasions before June 11, 1986. However, the leaks continued.
On July 3, 1986, Barra performed a "water test" and "thoroughly inspected the roof in question." In a letter sent to plaintiffs describing the inspection, Barra stated that "no water [had] penetrated the building and no leaks were found." Barra agreed to repair some "fasteners" and "flashings," but concluded that "the condition of the material in no way warrants the replacement of 30% of the roof," as plaintiffs' expert recommended. The report of plaintiffs' expert was called "totally inaccurate." In November 1986, Barra ceased discussion about further repairing the roof.
*235 Plaintiffs had the entire roof replaced in 1990 at a cost of $117,000, after having commenced this action against Barra and the "John Doe" manufacturer in December 1989. They ultimately filed an amended complaint against both Barra and Braas Systems, Inc. (BSI) in July 1991.[2] Summary judgment was granted in favor of BSI as an inappropriate party and in favor of both defendants because the controlling UCC four-year limitations period had not been satisfied.

II.
Plaintiffs first assert that dismissal of BSI was improper because BSI was responsible for distribution of the defective roofing material. See Spring Motors Distributors, Inc. v. Ford Motor Company, 98 N.J. 555, 561, 489 A.2d 660 (1985) (commercial buyer "in a distributive chain" may bring breach of warranty action under UCC). Plaintiffs contend:
Although the BSI president states unequivocally that Braas Systems, Inc. "did not participate in any way in the distribution chain regarding the materials at issue in this litigation," (Pa51, para. 4 [Heim Certification]), the same certification attaches a copy of the admitted Guarantee, which identifies the materials as "Braas Rhenofol plastic roof sheets." Pa52, first unnumbered paragraph. The coincidence of the name "Braas" and the trademark including the word "Braas" should not go unnoticed because it raises a credibility issue which cannot be resolved on summary judgment.
However, according to the certification of BSI's president, Joseph D. Heim, BSI is a "holding company" which merely owns the stock of Barra, and "did not manufacture, purchase, transfer, distribute, sell or install any of the roofing material at issue in this litigation." He also certified that "BSI did not issue any guarantee for this roofing material." No proofs were presented to contest Heim's *236 certification. Thus, plaintiffs have failed to present any facts to substantiate their claim against BSI.
Furthermore, we need not examine whether the "parent" company of a manufacturing entity can be said to be involved in the "chain of distribution" of a defective product. Here there was simply insufficient evidence, even given the report of plaintiffs' expert which relates to the material as installed, to hold that the problems with the roof were attributable to a defect at the time of sale or distribution of the product by the manufacturer. See Michalko v. Cooke Color & Chemical Corporation, 91 N.J. 386, 394, 451 A.2d 179 (1982); McLaughlin v. Acme Pallet Co., 281 N.J. Super. 565, 569, 658 A.2d 1314 (App.Div. 1995). Nor could sufficient inferences be drawn of such a defect. See Consalo v. General Motors Corporation, 258 N.J. Super. 60, 64-67, 609 A.2d 75 (App.Div.), certif. denied, 130 N.J. 597, 617 A.2d 1220 (1992). Thus, we find no basis for recovery against BSI, irrespective of whether in a case such as this the concept of strict liability in tort survives the UCC. See Santor v. A. & M. Karagheusian, Inc., 44 N.J. 52, 207 A.2d 305 (1965) (pre-UCC purchaser of defective goods has strict liability cause of action against manufacturer for economic loss); D'Angelo v. Miller Yacht Sales, 261 N.J. Super. 683, 687-88, 619 A.2d 689 (App.Div. 1993) (UCC provides exclusive consumer breach of warranty remedy for economic loss). Compare Delgozzo v. Kenny, 266 N.J. Super. 169, 182 n. 8, 628 A.2d 1080 (App.Div. 1993). See also Spring Motor, supra, 98 N.J. at 577-79, 489 A.2d 660.[3]

III.
The more significant question before us is whether the four-year UCC statute of limitations bars the action against Barra. Plaintiffs assert that the UCC does not control and that the case is governed by the general six-year statute of limitations embodied *237 in N.J.S.A. 2A:14-1. On that theory, this action was timely, as it was commenced in 1989 within six-years of the alleged breach of contract. Defendants insist, however, that we cannot consider plaintiffs' present contention because it was not asserted in the trial court. Before the Law Division, plaintiffs did "not dispute that the U.C.C. action accrued on November 3, 1981." Rather, they contended that the four-year limitation was "tolled" until at least September 17, 1985, when "Barra was first informed by plaintiffs that the roof was in need of repair." However, they also asserted below that this was a "defect" case governed by the six-year statute of limitations for strict liability claims under Santor, and that the limitations period runs "from the time the defect was noticed in June of 1986."
Defendants are correct that we will not ordinarily consider an issue raised for the first time on appeal unless it relates to "jurisdiction of the trial court or concern[s] matters of great public interest," or otherwise constitutes "plain error." See Nieder v. Royal Indemnity Insurance Company, 62 N.J. 229, 234, 300 A.2d 142 (1973). See also Hamilton, Johnston v. Johnston, 256 N.J. Super. 657, 662, 607 A.2d 1044 (App.Div.), certif. denied, 130 N.J. 595, 617 A.2d 1219 (1992); R. 2:10-2. However, we need not get caught up in the question concerning the extent to which plaintiffs have shifted gears or changed their position regarding the appropriate statute of limitations. Because the issues before the trial judge dealt with whether the suit was timely and what the controlling limitations period was, we will consider the same issues as presented to us, regardless of whether plaintiffs' principal theory has changed.

IV.
N.J.S.A. 12A:2-725 provides:
(1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it. (Emphasis added.)
*238 The motion judge concluded that this section prohibited the extended five-year period. Further, because N.J.S.A. 12A:2-725(2) provides that "[a] cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach," the judge also concluded that the suit was barred under the UCC.
N.J.S.A. 12A:2-102 provides that "[u]nless the context otherwise requires, this Chapter applies to transaction in goods." "Goods" are defined as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale." N.J.S.A. 12A:2-105(1). A "sale" involves "the passing of title from the seller to the buyer for a price." N.J.S.A. 12A:2-106(1). A "buyer" is defined as "a person who buys or contracts to buy goods." N.J.S.A. 12A:2-103(1)(a). Hence, this case involves the sale of goods and is controlled by N.J.S.A. 12A:2-725. See, generally, Dreier, Goldman & Katz, New Jersey Products Liability and Toxic Torts Law, §§ 1.2-2; 17:1; 17:2 (1995). See also Rosenau v. City of New Brunswick, 51 N.J. 130, 142-45, 238 A.2d 169 (1968).
In granting summary judgment, the motion judge concluded that D'Angelo v. Miller Yacht Sales controlled and that Santor was no longer good law in light of the UCC. The judge concluded that:

D'Angelo, I think, makes a very clear and reasoned explanation of the history of everything and the involvement  our original case was pre-UCC. It explains, really, why things evolved a little differently, and they  they make a conclusion, they hold the UCC provides the consumer buyer the exclusive remedy for direct economic loss resulting from conduct that constitutes the breach of expressed or implied warranties. Such claims must be brought within the four year limitations period of the code.
In Spring Motors, the Supreme Court held that a commercial buyer seeking damages for economic loss[4] resulting from the purchase of defective goods may recover from an immediate seller *239 and a remote supplier in a distribution chain for breach of warranty under the UCC. Spring Motors, supra, 98 N.J. at 578-79, 489 A.2d 660. The Court held that the buyer may not recover on other tort theories. Ibid. In D'Angelo we applied the same principle to consumer purchasers. See D'Angelo, supra, 261 N.J. Super. at 688, 619 A.2d 689. We concluded that "the Uniform Commercial Code provides a consumer buyer the exclusive remedy for direct economic loss resulting from conduct that constitutes the breach of express or implied warranties." Ibid. Such claims must be brought within the four-year limitations period of the UCC. Ibid.
However, this case also involves a guarantee which governs repair or maintenance. The guarantee includes the promise of providing a watertight roof for five years. Plaintiffs, therefore, claim that the case essentially involves a service contract, and should be governed by the six-year limitations period for contracts embodied in N.J.S.A. 2A:14-1. They urge that the Guarantee is a contract for the "sale of services," and assert:
Neither defendant installed the roof on the [plaintiffs'] residence. Barra sold material to roofing contractors, including the contractor who installed the roof. Barra issued the guarantee of the material to the homeowner on whose property the material was used. Moreover, Barra admitted in answers to interrogatories that it had communications with the [plaintiffs] concerning the roof and that Barra or a contractor on its behalf made repeated efforts to make the roof watertight. Pa116-120. There is no indication in these answers that Barra supplied any materials to do the repairs.
Defendants argue that the case is "exclusively governed by the UCC" because, "[w]ithout the sale of the goods (i.e. the roof), there would be no servicing" and, therefore, the "servicing is ancillary to the sale of goods." In addition, defendants contend that, even if the Guarantee is construed as a "service" contract, plaintiffs had no privity with defendant Barra and, hence, do not have a basis to sue for breach of that "service" contract. Moreover, the language of the Guarantee, according to defendants, "clearly indicates that the parties to the transaction did contemplate the application of the UCC because the guarantee properly and effectively disclaimed all implied warranties under the UCC."
*240 There are several decisions discussing the applicability of the UCC to warranties containing a "mix" of goods and services.
[T]he cases presenting mixed contracts of this type are legion. The test for inclusion or exclusion [from the UCC's coverage] is not whether they are mixed, but, granting that they are mixed, whether their predominant factor, their thrust, their purpose, reasonably stated, is the rendition of service, with goods incidentally involved (e.g., contract with artist for painting) or is a transaction of sale, with labor incidentally involved (e.g., installation of a waterheater in a bathroom).
[Meyers v. Henderson Construction Co., 147 N.J. Super. 77, 82, 370 A.2d 547 (Law Div. 1977) (quoting Bonebrake v. Cox, 499 F.2d 951, 960 (8th Cir.1974).)]
See also Downriver Internists v. Harris Corp., 929 F.2d 1147, 1151 (6th Cir.1991); Conopco, Inc. v. McCreadie, 826 F. Supp. 855, 868 (D.N.J. 1993) ("the question of whether goods or services predominate in a mixed goods and services contracts is one of fact" unless, viewing the facts most favorably to the non-moving party, "there is no genuine issue of material fact which could lead a jury to conclude that goods predominate the contract" between the parties).
In Tele-Radio Systems Ltd. v. De Forest Electronics, Inc., 92 F.R.D. 371, 373-74 (D.N.J. 1981), the United States District Court for this District, applying New Jersey law, explained that in determining whether a contract is for "sale of goods," and thus covered by the UCC, a court must examine the whole transaction between the parties and look to the essence or main objective of the parties' agreement. Where the "sale of goods is incidental to the basic purpose of the contract, the general statute of limitations on contracts will apply rather than the UCC statute of limitations." Id. at 373. However, as Judge Fisher explained, where the contract contemplates "services" as well as the "sale of goods, the contract remains one of sale if those services were merely incidental or collateral to the sale of goods." Ibid. Compare Gentile v. MacGregor Manufacturing Company, 201 N.J. Super. 612, 617, 493 A.2d 647 (Law Div. 1985) (no need to expand the UCC "to cover pure service transactions within the scope of sale").
We agree with defendants that, here, the predominant and underlying reason for the Guarantee related to the sale of goods, and that Barra's guarantee to "repair such defects" or "replace *241 such defective material[s]" was incidental to the initial sale and installation of the roofing materials. Even so, the UCC does not bar the action because of an exception to the "accrual" provision of N.J.S.A. 12A:2-725(1), as embodied in N.J.S.A. 12A:2-725(2).
As already noted, a cause of action under the UCC accrues "when the breach occurs." N.J.S.A. 12A:2-725(2) provides that
[a] breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.
[(Emphasis added.)]
The proper characterization of the warranty is a legal question, and the question before us is whether the guarantee relates to "future performance." See Commissioners of Fire District No. 9 v. American La France, 176 N.J. Super. 566, 572, 424 A.2d 441 (App.Div. 1980) (deciding "the basic legal issue").
Under N.J.S.A. 12A:2-725(1), the statute of limitations normally commences to run upon tender of delivery, even though the buyer does not know the goods are defective. See Deluxe Sales and Service, Inc. v. Hyundai Engineering and Construction Company, Ltd., 254 N.J. Super. 370, 374, 603 A.2d 552 (App.Div. 1992) (cause of action on warranty accrues, for limitations purposes, when "tender of delivery" is made); Commissioners of Fire District 9, supra, 176 N.J. Super. at 572, 424 A.2d 441. However, when breach of an express warranty of "future performance" is involved, "the four-year limitations period does not begin to run until the breach." See Commissioners of Fire District 9, supra, 176 N.J. at 572-73, 424 A.2d 441. See also Delgozzo, supra, 266 N.J. Super. at 182-83, 628 A.2d 1080; Biocraft Laboratories, Inc. v. USM Corporation, 163 N.J. Super. 570, 395 A.2d 521 (App.Div. 1978). The exception embodied in N.J.S.A. 12A:2-725(2) provides that the cause of action accrues when "the breach is or should have been discovered," and applies only to cases where warranties "explicitly extend [] to future performance."
In Commissioners of Fire District No. 9, we stated that "the key requirement in finding a warranty of future performance is *242 that it makes specific reference to a future time." Commissioners of Fire District No. 9, supra, 176 N.J. Super. at 573, 424 A.2d 441. Such a warranty:
cannot be characterized as a mere representation of the product's condition at the time of delivery rather than its performance at a future time. Additionally, unlike a warranty to repair or replace, such warranty does not assume that the product will not perform and will need repair or replacement.
[Ibid.]
See also Dreier Company, Inc. v. Unitronix Corporation, 218 N.J. Super. 260, 268, 527 A.2d 875 (App.Div. 1986).
Here, the warranty promises that the roof will be "watertight" and will be returned to that condition were it to leak. It, therefore, refers to a condition in the future, and contemplates an obligation to repair.
In Nationwide Insurance Company v. General Motors Corporation, 533 Pa. 423, 625 A.2d 1172, 1173 (1991), the Supreme Court of Pennsylvania recently concluded that a twelve-month/12, 000 mile new automobile promising "repairs and needed adjustments" of manufacturing defects "explicitly extend to future performance of the goods." The warranty period began to run "on the date the car [was] first delivered or put in use." Id. 625 A.2d at 1175. The Nationwide Insurance Company court held that no breach occurs until a repair is necessary. Id. 625 A.2d at 1177-78. The court further concluded that any ambiguity regarding the nature of the warranty had to be "resolved in favor of the nondrafting party," and that an obligation to "repair or replace" "do[es] fit within the modern concept of warranty." Id. at 1177. Significantly, the court added:
There can be little question that the consumer will consider the length of any warranty offered in determining whether to purchase a particular vehicle: The consumer naturally would believe that the longer the warranty, the greater the protection, and hence, the better the value, he or she is receiving. If Appellee's position were to prevail, the protection afforded the buyer during the latter part of a warranty approaching four years would be largely illusory, as the buyer would have a very short period of time in which to bring a cause of action for breach. Moreover, the longer-term protection afforded by a warranty extending beyond four years would be completely illusory.
[Id. at 1178.]
*243 This rationale is applicable in this case where there is no suggestion of an arm's length or commercial relationship between Barra and the homeowner. We must presume in this procedural setting that Barra's warranty induced the homeowner to contract for the installation by the roofer involved. No one suggests in this case that plaintiffs cannot assert the rights of the homeowner, and here defendants seek to have the warranty expire four years from installation notwithstanding that the warranty expressly embodies a five-year period. So long as the warranty related to "future performance," the period of repose under N.J.S.A. 12A:2-725(1) does not govern. Rather, the matter is controlled by the exception embodied in N.J.S.A. 12A:2-725(2).
Of course, the instant action was not commenced within five years of the installation. It was commenced within four years of discussions between plaintiffs and Barra, but not within four years of discovery of a problem with the roof and the initial communications with Barra. Because the issue was not explored in the trial court, our holding does not preclude a defense premised on delay in commencing an action more than four years after the breach of warranty was "or should have been discovered." It is clear that plaintiffs bought their home in 1985, that the parties engaged in communications in 1985 and 1986, and that Barra may have made some repairs in 1986 before declining to do further work on the roof. We leave for further development such issues as to when the alleged "breach" of warranty occurred and whether the complaint filed against Barra in December 1989 was within the four-year period embodied in N.J.S.A. 12A:2-725(2).
In summary, we hold that where, incident to a sale, the seller of consumer goods warrants to repair and maintain the goods for a period of time in the future, the provisions of N.J.S.A. 12A:2-725(2) control, and the four-year statute of limitations does not begin to run until after the breach of warranty was or should have been discovered.
*244 The judgment in favor of BSI is affirmed. The judgment in favor of Barra is reversed, and the matter is remanded for further proceedings consistent with this opinion.
NOTES
[1] It was agreed before us that plaintiffs are entitled to exercise Ms. Kessler's rights under the guarantee.
[2] The counts of plaintiffs' amended complaint seek recovery (1) against Barra and BSI for breach of the Guarantee, (2) against Barra for negligence in the installation of the roof, (3) against BSI for alleged negligence in the manufacturing of the roofing materials, and against both Barra and BSI based on (4) strict liability in tort, (5) breach of the implied warranty of merchantability and (6) breach of the implied warranty of fitness for a particular purpose.
[3] In light of our holding, we need not consider if the 1991 amended complaint against BSI relates back to the 1989 filing against John Doe.
[4] Economic loss includes the cost of replacement and repair of the defective item. See Juliano v. Gaston, 187 N.J. Super. 491, 497, 455 A.2d 523 (App.Div. 1982), certif. denied, 93 N.J. 318, 460 A.2d 709 (1983).