Barton L. ANDERSON and Bonnie Anderson, Appellants,

v.

CRESTLINER, INC., Respondent.

No. C5–97–49.

Court of Appeals of Minnesota.

June 24, 1997.

Brian N. Toder, Brian N. Toder, Ltd., Stewart C. Loper, St. Paul, for Appellants.

John D. Sear, Todd A. Cavanaugh, Bowman and Brooke, Minneapolis, for Respondent.

Considered and decided by RANDALL, P.J., TOUSSAINT, C.J., and KALITOWSKI, J.

## OPINION

KALITOWSKI, Judge.

Appellants Barton and Bonnie Anderson challenge the district court's determination that their action against respondent Crestliner, Inc. was barred by the four-year statute

of limitations under Minn.Stat. § 336.2–725 (1996).

## FACTS

On April 24, 1989, the Andersons purchased a 21–foot Crestliner fiberglass power boat from respondent that came with a 1989 Crestliner warranty that states in relevant part:

Crestliner warrants to the first purchaser at retail that each new boat of Crestliner's manufacture shall be free from any defect in material or workmanship according to the following guidelines.

\* \* \* \*

### FIBERGLASS BOATS

The following warranties apply specifically to all fiberglass boats.

1. The warranty period for defects in material or workmanship of the hull and deck structure is 5 years.

\* \* \* \*

### EXCLUSIVE REMEDY UNDER CRESTLINER WARRANTY

As the original retail purchaser's sole and exclusive remedy under this warranty, Crestliner, will, at its option, repair or replace without charge any part or parts covered by this warranty and found to Crestliner's satisfaction, to be defective in material or workmanship upon examination at its factory, Little Falls, Minnesota.

Subsequently, appellants began to experience problems with the hull. On October 17, 1991, appellants made a complaint to respondent. In February 1992, respondent's employees inspected the boat, but claimed not to have found any hull damage. After the inspection, representatives of respondent met with appellants and agreed to have the hull repaired, which was done in May 1992. On June 7, 1992, appellants complained to respondent regarding the boat, but were told that respondent would not spend any more money on it.

On April 11, 1994, appellants sent a letter to respondent demanding that respondent honor its warranty by repairing the hull. Respondent did not answer appellants' letter. On September 15, 1995, appellants brought a lawsuit against respondent, alleging breach of express warranty, breach of implied warranty, violation of the Magnuson–Moss Warranty Act, and negligence. The negligence claim was later dismissed by the district court. Upon respondent's motion, the district court granted summary judgment on the ground that appellants' action was barred by the four-year statute of limitations under Minn.Stat. § 336.2–725(1).

## ISSUE

Did the district court err in determining that the Andersons' action was barred by the statute of limitations under Minn.Stat. § 336.2–725(1)?

## ANALYSIS

On appeal from summary judgment, a reviewing court determines whether any genuine issues of material fact exist and whether the district court erred in its application of the law. *Wartnick v. Moss & Barnett,* 490 N.W.2d 108, 112 (Minn.1992). In doing so, the court views the evidence in the light most favorable to the nonmoving party. *State by Beaulieu v. City of Mounds View,* 518 N.W.2d 567, 571 (Minn.1994).

▮▮▮ Whether a contract term is ambiguous is a legal question for the court. *In re Hennepin County 1986 Recycling Bond Litigation,* 540 N.W.2d 494, 498 (Minn.1995). "Absent ambiguity, the construction of a contract is a question of law." *Krogness v. Best Buy Co.,* 524 N.W.2d 282, 285 (Minn.App. 1994) (citation omitted), *review denied* (Minn. Jan. 25, 1995). When interpreting a contract, "the language found in a contract is to be given its plain and ordinary meaning." *Turner v. Alpha Phi Sorority House,* 276 N.W.2d 63, 67 (Minn.1979) (citations omitted).

### I.

Appellants' claim for breach of express warranty was premised on the Crestliner warranty. Under Minnesota law, an action for breach of contract for sale of goods "must be commenced within four years after the

cause of action has accrued." Minn.Stat. § 336.2–725(1) (1996). Further,

[a] cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

Minn.Stat. § 336.2–725(2) (1996).

The district court concluded that the Crestliner warranty did not constitute a warranty extending to "future performance of the goods," but was only a repair or replacement commitment within a specified time. As such, the district court held appellants' action for breach of express warranty accrued when the boat was delivered on April 24, 1989, and that appellants' action was barred by the four-year statute of limitations because they did not file the complaint until September 15, 1995.

Appellants argue the district court erred in failing to consider the first paragraph of the warranty together with the warranty language for fiberglass boats. We agree.

■ The first paragraph of the Crestliner warranty provides that respondent warrants to the first purchaser at retail that each new boat "shall be free from any defect in material or workmanship *according to the following guidelines*." (Emphasis added.) One of the guidelines for fiberglass boats is that "[t]he warranty period for defects in material or workmanship of the hull and deck structure is 5 years." Reading the warranty as a whole as required by the warranty itself, respondent explicitly warrants to "the first purchaser at retail" that each new fiberglass boat's hull and deck structure shall be free from any defects in material or workmanship for five years.

The warranty in question is similar to the warranty in *Church of the Nativity of Our Lord v. WatPro, Inc.*, 491 N.W.2d 1, 6 (Minn. 1992). In that case, the supreme court addressed the question of whether a warranty promising to maintain the roof in a water-tight condition for a period of ten years was a warranty that explicitly extended to future performance under Minn.Stat. § 336.2–725. *Id.* at 6. The court held that the guarantees "extended to the future performance of the goods, expressly warranting that the roofs would remain watertight for ten years." *Id.*

Here, the Crestliner warranty guarantees to the first purchaser at retail that each new fiberglass boat's hull and deck structure shall be free from any defects in material or workmanship for five years. Like the warranty in *WatPro, Inc.*, this warranty explicitly extends to future performance. *See Grand Island Express v. Timpte Indus., Inc.*, 28 F.3d 73, 75 (8th Cir.1994) (holding that a warranty promising that the trailers would be free from defects in material and workmanship for a period of five years from the date of delivery to the first purchaser extended to future performance); *R.W. Murray Co. v. Shatterproof Glass Corp.*, 697 F.2d 818, 823 (8th Cir.1983) (holding that warranties providing that the glass units would perform in a specified manner for a specified period of time with a limitation of the remedy to repair or replacement in the event of a breach of those warranties extended to future performance); *Standard Alliance Indus., Inc. v. Black Clawson Co.*, 587 F.2d 813, 820–21 (6th Cir.1978), *cert. denied*, 441 U.S. 923, 99 S.Ct. 2032, 60 L.Ed.2d 396 (1979) (holding that an express warranty for a period of one year explicitly extended to future performance); *Executone Bus. Sys. Corp. v. IPC Communications, Inc.*, 177 Mich.App. 660, 668–69, 442 N.W.2d 755, 760 (1989) (holding that warranty that guaranteed telephone systems to be free from defects in material and workmanship for a period of 13 months extended to future performance), *review denied* (Mich. Feb. 26, 1990); *Paskell v. Nobility Homes, Inc.*, 871 S.W.2d 481, 483–84 (Tenn.1994) (holding that warranty that guaranteed the roof and rafter system of the plaintiff's mobile home for a period of five years constituted warranty that extended to future performance); *Docteroff v. Barra Corp. of America, Inc.*, 282 N.J.Super. 230, 243, 659 A.2d 948, 955 (1995) (holding that a warranty extended to future performance when the supplier guaranteed that it would

maintain the roof in a watertight condition for five years).

The following reasoning in *Docteroff* is instructive in determining whether the warranty here extends to future performance:

There can be little question that the consumer will consider the length of any warranty offered in determining whether to purchase a particular vehicle: The consumer naturally would believe that the longer the warranty, the greater the protection, and hence, the better the value, he or she is receiving. *If Appellee's position were to prevail, the protection afforded the buyer during the latter part of a warranty approaching four years would be largely illusory, as the buyer would have a very short period of time in which to bring a cause of action for breach. Moreover, the longer-term protection afforded by a warranty extending beyond four years would be completely illusory.*

*Docteroff,* 282 N.J.Super. at 242, 659 A.2d at 954 (quoting *Nationwide Ins. Co. v. General Motors Corp.,* 533 Pa. 423, 625 A.2d 1172, 1178 (1993)) (emphasis added). Here, the district court's holding that appellants' warranty expired four years after the delivery of the boat is inconsistent with the express language providing for a five-year warranty period.

■ Further, the district court erred when it construed the warranty as a repair or replacement commitment, rather than a warranty of future performance. A warranty of future performance is different from a repair or replacement warranty. *Ontario Hydro v. Zallea Sys., Inc.,* 569 F.Supp. 1261, 1266 (D.Del.1983).

A warranty of future performance of a product must expressly provide some form of guarantee that the product will perform in the future as promised. * * *

On the other hand, a repair or replacement warranty does not warrant how the goods will perform in the future. Rather, such a warranty simply provides that if a product fails or becomes defective, the seller will replace or repair within a stated period.

Thus, the key distinction between these two kinds of warranties is that a repair or replacement warranty merely provides a *remedy* if the product becomes defective, while a warranty for future performance *guarantees the performance* of the product itself for a stated period of time. In the former case, the buyer is relying upon the warranty merely as a method by which a defective product can be remedied which has no effect upon his ability to discover a breach. In the latter instance, the buyer is relying upon the warranty as a guarantee of future performance and therefore has no opportunity to discover the breach until the future performance has been tested.

*Id.* "[T]he presence of language limiting the remedy to replacement of defective materials, by itself, is [not] determinative of the exact nature of the warranties in question." *Shatterproof Glass Corp.,* 697 F.2d at 823.

In holding that the Crestliner warranty does not extend to future performance, the district court relied on *Zallea Sys., Inc.* and *Crouch v. General Elec. Co.,* 699 F.Supp. 585 (S.D.Miss.1988). The court's reliance on these two cases is misplaced. In *Zallea Sys., Inc.,* the warranty provides:

If at any time up to twelve (12) months after the date of Acceptance of the Equipment by the Engineer, any defect or deficiency should appear due to faulty workmanship, material or design, or if the Equipment or any part thereof fails to meet the requirements of the Contract, the Company shall restore the Equipment to satisfactory operating condition * * *.

*Id.* at 1264. Nowhere in this warranty does *Zallea* warrant how the equipment will perform in the future. Rather, the warranty provides a remedy for repair within one year of acceptance if any defects appear as specified in the warranty. *Id.* This warranty is different from the Crestliner warranty that explicitly promises that the hull and deck structure of each new fiberglass boat shall be free from any defects in material and workmanship for a period of five years.

Similarly, the warranty in *Crouch* is distinguishable from the Crestliner warranty. In *Crouch,* the warranty states that the helicopter engines "will, *at the time delivery [sic]* be

free from defects in material and workmanship." *Id.* at 593 (emphasis added). This "warranty of material and workmanship" does not expressly guarantee the future performance of the helicopter engines; rather, it simply warrants the condition of the goods *at the time of delivery*. *Id.* at 594 (emphasis added). In contrast, the Crestliner warranty does not just guarantee the condition of the boat at the time of sale, as argued by respondent. Rather, it promises to *the first purchaser at retail* that each new boat shall be free from any defect in material or workmanship according to the guidelines set out in the warranty.

## II.

Respondent further argues appellants' claims are time-barred even if the Crestliner warranty extends to future performance because appellants commenced this action more than four years after the breach was or should have been discovered. Respondent contends appellants knew or should have known of the breach in 1989, but no later than the summer of 1991. We disagree.

In *WatPro, Inc.*, the supreme court stated that where there is a warranty that explicitly extends to future performance,

> the cause of action accrues and the statute of limitations begins to run "when the plaintiff discovers or should have discovered the defendant's refusal or inability to maintain the goods as warranted in the contract."

*WatPro, Inc.*, 491 N.W.2d at 6. The court in *WatPro, Inc.* held the breach occurred when the distributor advised the building owner that the manufacturer's agent was unable or unwilling to honor its guaranty. *Id.* at 7. Applying this holding here, the breach of warranty occurred on June 7, 1992, when respondent told appellants it was unwilling to spend more money on the boat. Appellants commenced this action on September 15, 1995, well within the four-year statutory period under Minn.Stat. § 336.2–725.

## DECISION

The district court erred in holding that the Crestliner warranty does not explicitly extend to future performance and in dismissing appellants' action as untimely.

**Reversed.**