793 A.2d 104 (2002)
349 N.J. Super. 169
Larry POLI, Plaintiff-Appellant,
v.
DAIMLERCHRYSLER CORPORATION, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted October 10, 2001.
Decided March 15, 2002.
*105 Power & Associates, Glen Mills, PA, for appellant (Michael D. Power, on the brief).
Marshall, Dennehey, Warner, Coleman & Goggin, Cherry Hill, for respondent (Kevin M. McKeon, on the brief).
Before Judges SKILLMAN, WALLACE, JR. and WELLS.
The opinion of the court was delivered by SKILLMAN, P.J.A.D.
The primary issue presented by this appeal is whether a cause of action for breach of a seller's agreement to repair any product defect that occurs during a warranty period accrues upon delivery of the product or only after the seller fails to perform the agreed repairs. We conclude that such a cause of action does not accrue until the seller fails to perform the required repair within a reasonable period of time. We reach the same conclusion with respect to a warranty claim under the Magnuson-Moss Warranty Act.
On March 23, 1993, plaintiff purchased a new 1992 Dodge Spirit manufactured by defendant DaimlerChrysler Corporation. When he made this purchase, plaintiff elected to obtain a seven-year, seventy-thousand-mile "powertrain" warranty from defendant.
Plaintiff's claims arise out of a series of repairs and replacements of the "engine timing belt," which was one of the parts covered by the powertrain warranty. On December 16, 1993, after the car had been driven 16,408 miles, plaintiff had the timing belt replaced. More than three years later, on March 21, 1997, after the car had been driven 36,149 miles, plaintiff had the belt repaired. Plaintiff then had to have the belt replaced on May 16, 1997, January 5, 1998 and July 6, 1998. According to plaintiff, the timing belt again failed on July 31, 1998, causing the destruction of the "short block" of the engine, which the dealer took six months to repair. All of these timing belt repairs and replacements were purportedly performed by defendant in accordance with the seven-year, seventy-thousand-mile powertrain warranty obtained by plaintiff when he purchased the car.
On December 15, 1998, plaintiff brought this action against defendant for breach of the seven-year, seventy-thousand-mile *106 powertrain warranty. Plaintiff also asserted claims under the Lemon Law, N.J.S.A. 56:12-29 to -49, the Magnuson-Moss Warranty Act, 15 U.S.C.A. §§ 2301-2312, and the Consumer Fraud Act, N.J.S.A. 56:8-1 to -106.
Defendant moved for summary judgment on the ground that plaintiff's complaint and supporting exhibits did not state a claim under the Lemon Law and that plaintiff's other claims were barred by the statute of limitations.[1] In his response, plaintiff indicated that he was not pursuing his claim under the Consumer Fraud Act.
The trial court granted defendant's motion as to plaintiff's other claims and dismissed the complaint. The court held that plaintiff's claim under the Lemon Law was barred because he had not given defendant notice and an opportunity to correct the alleged defect within the first 18,000 miles of operation. The court dismissed plaintiff's warranty and Magnuson-Moss Act claims as untimely because they were not brought within four years after delivery of the car. The court rejected plaintiff's argument that his warranty and Magnuson-Moss claims were timely because the seven-year, seventy-thousand-mile powertrain warranty was "a guarantee of performance" which defendant breached by failing to properly repair the timing belt.
Plaintiff appeals. We affirm the dismissal of plaintiff's Lemon Law claim, but reverse the dismissal of his warranty and Magnuson-Moss Act claims.

I
To assert a claim under the Lemon Law, a complaint must allege that (1) "[the plaintiff] report[ed] a nonconformity in [the] motor vehicle to the manufacturer or its dealer during the first 18,000 miles of operation or during the period of two years following the date of original delivery..., whichever is earlier," N.J.S.A. 56:12-31, and that (2) "the manufacturer or its dealer [was] unable to repair or correct [the] nonconformity within a reasonable time," N.J.S.A. 56:12-32(a). If a plaintiff can establish both of these preconditions for relief under the Lemon Law, he is entitled to return the vehicle to the manufacturer and to receive "a full refund of the purchase price ..., less a reasonable allowance for vehicle use." N.J.S.A. 56:12-32(a).
Although plaintiff alleges that he brought his car to the dealer for repair of the engine timing belt when it had been driven less than 18,000 miles and within two years of delivery, he does not allege that the dealer failed to correct this condition within a reasonable time. To the contrary, he states that the dealer replaced the timing belt, and that he continued driving the car for three more years before he experienced any problems with the replacement belt. When that occurred, the car had been driven more than 36,000 miles and four years had elapsed since defendant delivered the car to plaintiff. Thus, the period of protection the Lemon Law provides a purchaser of a new automobile had expired at least two years earlier. Moreover, plaintiff did not offer any evidence that the replacement engine timing belt installed in his car in 1993 was defective or that the dealer improperly installed this part. Consequently, there is *107 no basis for a claim under the Lemon Law, which only applies to an uncorrected nonconformity that is reported within the first 18,000 miles of operation or within two years after delivery of the car.
We also note that the Director of the Division of Consumer Affairs, which is responsible for administration of the Lemon Law, see DiVigenze v. Chrysler Corp., 345 N.J.Super. 314, 329-31, 785 A.2d 37 (App.Div.2001), certif. denied, 171 N.J. 442, 794 A.2d 181 (2002), rejected a Lemon Law claim under facts similar to this case, pointing out that the law does not provide "continuous protection to car buyers" but instead applies only to defects identified and reported within the statutorily specified period. Fowler-Fernandez v. Volkswagon United States, Inc., 96 N.J.A.R. (CMA) 190 (1996). This interpretation of the statute by the agency charged with responsibility for its administration is entitled to substantial deference, Earl v. Johnson & Johnson, 158 N.J. 155, 167, 728 A.2d 820 (1999), which provides additional support for our conclusion that plaintiff's complaint fails to state a cause of action under the Lemon Law.

II
We turn next to the trial court's conclusion that plaintiff's claim for breach of defendant's seven-year, seventy-thousand-mile powertrain warranty was not filed within the four-year limitation period established by the Uniform Commercial Code (UCC) for breach of warranty claims.
The powertrain warranty applies to all "parts, assemblies and components that together provide the power to [the] car." During the term of this warranty, which is "7 years or 70,000 miles, whichever occurs first, counted from the vehicle's Warranty Start Date,"[2] defendant is obligated to "cover[ ] the cost of all parts and labor needed to repair or adjust any Chrysler supplied item ... that proves defective in material, workmanship or factory preparation." [3] Defendant acknowledges that the engine timing belt is covered by this warranty.
The limitations period under the UCC for an action for breach of a sales contract is "four years after the cause of action has accrued." N.J.S.A. 12A:2-725(1). The UCC further provides that "[a] cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach[,]" and that "[a] breach of warranty occurs when tender of delivery is made[.]" N.J.S.A. 12A:2-725(2). However, the UCC provides an exception to this general rule if "a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance[.]" Ibid. If a seller has provided this form of warranty, "the cause of action accrues when the breach is or should have been discovered." Ibid.
Defendant contends that the powertrain warranty given to plaintiff was an ordinary sales warranty, and that plaintiff therefore *108 had only four years after the delivery of the car on March 23, 1993, to bring an action for any breach of the warranty. If this view of the powertrain warranty were correct, plaintiff's claim for breach of the warranty would be time barred because he did not file this action until December 15, 1998, which was more than four years after delivery of the car. On the other hand, plaintiff contends that the powertrain warranty was a warranty of future performance, which defendant did not breach until 1998, when it failed to properly repair the timing belt, thus causing plaintiff recurrent problems with the operation of the car. Under this view of the warranty, plaintiff's action was filed well within the four-year period allowed under N.J.S.A. 2A:2-725(1).
In Docteroff v. Barra Corp. of Am., Inc., 282 N.J.Super. 230, 241-43, 659 A.2d 948 (App.Div.1995), we held that a "guarantee" by a seller of roofing materials that it would "maintain the roof ... [i]n a watertight condition ... for (5) five years[,]" and would repair or replace any defects that arose during that period, constituted a promise of future performance, and that the four-year UCC statute of limitations did not begin to run until the seller's breach was or should have been discovered. In reaching this conclusion, we noted that a seller's agreement to repair or replace defects in parts that become evident during a specified period "fit[s] within the modern concept of warranty." Id. at 242, 659 A.2d 948 (quoting Nationwide Ins. Co. v. General Motors Corp., 533 Pa. 423, 625 A.2d 1172, 1177 (1993)).[4] We also noted that "[s]uch a warranty ... `cannot be characterized as a mere representation of the product's condition at the time of delivery rather than its performance at a future time.'" Ibid. (quoting Commissioners of Fire Dist. No. 9 v. American La France, 176 N.J.Super. 566, 573, 424 A.2d 441 (App.Div.1980)).
The seven-year, seventy-thousand-mile warranty that defendant gave plaintiff was similar to the warranty involved in Docteroff. Although defendant did not describe the warranty as a "guarantee" of future performance, it was not "a mere representation of the [car's] condition at the time of delivery" but rather a promise relating to "its performance at a future time[,]" 282 N.J.Super. at 242, 659 A.2d 948, that is, as in Docteroff, an enforceable agreement that if a covered defect arose at any time during the period of the warranty, defendant would repair that condition. Therefore, we conclude that a claim for breach of this warranty did not accrue at the time of delivery of the car but rather when defendant allegedly breached its duty to repair the defect.
The correctness of this conclusion is clearest in a case such as this, where the term of the warranty is longer than the four-year limitations period provided in N.J.S.A. 12A:2-725(1). If we adopted defendant's view that its powertrain warranty is an ordinary sales warranty, and consequently that a buyer must bring an action for breach of that warranty within four years of delivery, this would mean that the buyer would be unable to enforce defendant's warranty obligations for any breach that occurred beyond or even near the end of that four-year period, even though by its terms the warranty extends for as long as seven years. We are unwilling to construe N.J.S.A. 12A:2-725(2) *109 in a way that could lead to such an unreasonable result. See State v. Gill, 47 N.J. 441, 444, 221 A.2d 521 (1966).
This conclusion is also supported by decisions in other jurisdictions. In Nationwide Ins. Co. v. General Motors Corp., supra, the Pennsylvania Supreme Court held that a "12 month/12,000 mile `New Car Limited Warranty' promising `repairs and needed adjustments' to correct manufacturing defects is a warranty that `explicitly extends to future performance of the goods' for purposes of determining when a cause of action for breach of that warranty accrues" under section 2-725(2) of the UCC:
[W]e do not read the words "explicitly extends to future performance of the vehicle" to require that the warranty make an explicit promise regarding how the goods will perform in the future. We believe that the focus of § 2725 is not on what is promised, but on the duration of the promisei.e., the period to which the promise extends.... Therefore, we agree with Appellant that the phrase "explicitly extends to future performance" can be interpreted to include a promise that, by its terms, comes into play upon, or is contingent upon, the future performance of the goods.... Logically, a promise to repair or adjust defective parts within the first 12 months or 12,000 miles after delivery cannot be breached until the vehicle requires repair or adjustment, and "discovery of the breach must await the time of [future] performance."
....
Furthermore, we will not permit [General Motors] and other sellers who draft similar documents to escape the consequences of presenting them to the consumer as "extended warranties." There can be little question that the consumer will consider the length of any warranty offered in determining whether to purchase a particular vehicle: The consumer naturally would believe that the longer the warranty, the greater the protection, and hence, the better the value, he or she is receiving. If [General Motors] position were to prevail, the protection afforded the buyer during the latter part of a warranty approaching four years would be largely illusory, as the buyer would have a very short period of time in which to bring a cause of action for breach. Moreover, the longer-term protection afforded by a warranty extending beyond four years would be completely illusory.
[625 A.2d at 1173, 1176-78 (citations omitted).]
See also Wienberg v. Independence Lincoln-Mercury, Inc., 948 S.W.2d 685, 690 (Mo.Ct.App.1997) ("[W]here a warranty expressly extends to future performance of the goods, repair or replacement language does not necessarily nullify the future performance warranty."); Krieger v. Nick Alexander Imports, Inc., 234 Cal.App.3d 205, 285 Cal.Rptr. 717, 724 (1991) ("A promise to repair defects that occur during a future period is the very definition of express warranty of future performance[.]").
There are other jurisdictions which hold that the kind of repair warranty involved in this case is not "a warranty [that] explicitly extends to future performance of the goods," N.J.S.A. 12A:2-725(2), but that a cause of action for breach of such a warranty does not accrue upon delivery because "the promise to repair is an independent obligation that is not breached until the seller fails to repair." Cosman v. Ford Motor Co., 285 Ill.App.3d 250, 220 Ill.Dec. 790, 674 N.E.2d 61, 68 (1996), appeal denied, 172 Ill.2d 549, 223 Ill.Dec. 194, 679 N.E.2d 379 (1997); see also Versico, Inc. v. Engineered Fabrics Corp., 238 *110 Ga.App. 837, 520 S.E.2d 505, 509-10, cert. denied (Ga.1999); Nationwide Ins. Co. v. General Motors Corp., supra, 625 A.2d at 1179-81 (Zappala, J., dissenting). The rationale for this view is that
[such a] warranty does not promise a level of performance. It warrants only that the dealer will repair, replace, or adjust defects if parts of the powertrain in fact do malfunction. It does not warrant the quality of the powertrain or its performance.... A promise to repair parts of the powertrain for six years is a promise that the manufacturer will behave in a certain way, not a warranty that the vehicle will behave in a certain way.
....
It does not fit within the definition of warranty under the Commercial Code. Although it is a warranty made as part of the sale of the goods in the sense that it promises something associated with the sale, it does not "warrant" the quality of the vehicle or its performance.
[Cosman, supra, 674 N.E.2d at 66-67.]
This is also the view taken of some scholarly commentaries. For example, Anderson on the Uniform Commercial Code states:
A warranty of future performance differs from a covenant to repair or replace. The future performance warranty expressly provides some form of guaranty that the product will perform as required during the specified time. The obligation to repair or replace merely imposes a duty to repair or replace when a defect exists within the required period of time.
....
Although ... courts [that treat a covenant to repair or replace as a warranty of future performance] are sound in their conclusion that the statute of limitations should not commence until the seller has breached its promise to repair or replace the goods or any defective parts, it makes more sense to view the seller's failure to do so as a breach of contract, rather than as a breach of warranty. By so doing, the buyer's cause of action does not arise until the seller has refused to repair or replace the goods rather than upon the tender of delivery.
[Lary Lawrence, Lawrence's Anderson on the Uniform Commercial Code § 2-725:129 at 332-33 (3d ed.2001).]
Moreover, this is the view the National Conference of Commissioners on Uniform State Laws has taken in a draft revision of the UCC, which treats a "promise by the seller to repair or replace the goods or to refund all or part of the purchase price upon the happening of a specified event" as a "remedial promise." Amendments to Uniform Commercial Code, Article 2 Sales (Annual Meeting 2001 Draft) § 2-103(1)(m). Under this proposed revision, a promise by a seller to repair or replace a defective part during a specified warranty period "is not a warranty at all and therefore is not subject to either the time of tender [rule of 725(1)] or [the] discovery rule [of 725(2)]." Amendments to Uniform Commercial Code, supra, preliminary comment to § 2-103(1)(m). Instead, a cause of action for breach of a remedial promise would accrue "when the remedial promise is not performed when due." Amendments to Uniform Commercial Code, supra, § 2-725(2)(c).
We have no need to decide whether defendant's seven-year/seventy-thousand-mile powertrain warranty constituted a warranty of future performance within the intent of N.J.S.A. 12A:2-725(2) or an independent promise to repair defects in the powertrain that appear during the term of the warranty because, under either view, *111 plaintiff's cause of action would not have accrued when the car was delivered in 1993 but rather when persistent problems in the engine timing belt appeared in 1997 or when defendant was allegedly unable to repair this defect in a timely manner in July 1998, and thus plaintiff's complaint was timely filed in December 1998.

III
The Magnuson-Moss Warranty Act (the Act) does not require any consumer product to be warranted. 15 U.S.C.A. § 2302(b)(1)(B)(2). However, if a manufacturer or other supplier warrants a product, the Act imposes specific obligations on the warrantor, which include compliance with minimum federal standards for warranties. 15 U.S.C.A. § 2304(a). If a warrantor violates any of those obligations, a buyer may bring an action in federal or state court for damages and equitable relief. 15 U.S.C.A. § 2310(d).[5]
The Act does not contain any express limitations period for actions brought under its provisions. Where a federal statute creates a cause of action, but does not establish a limitations period for that action, the courts will apply the state statute of limitations governing the state cause of action most closely analogous to the federal action. DelCostello v. International Bhd. of Teamsters, 462 U.S. 151, 158-60, 103 S.Ct. 2281, 2287-89, 76 L.Ed.2d 476, 485-86 (1983).
The statutory cause of action that is most analogous to a claim under the Act is a breach of warranty claim under the UCC, which is governed by the limitations provisions of N.J.S.A. 12A:2-725. Furthermore, even though, as previously discussed, there is some debate as to whether the kind of repair warranty involved in this case is "a warranty [that] explicitly extends to future performance of the goods" within the intent of section 2-725(2), see supra pp. 109-110, it is clear that such a warranty is a warranty of future performance under the more expansive definition of warranty contained in the Act. The term "written warranty" is defined under the Act to mean not only "(A) any written affirmation of fact or written promise made in connection with the sale of a consumer product ... which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time," but also "(B) any undertaking in writing ... by a supplier of a consumer product to refund, repair, replace, or take other remedial action ... in the event that such product fails to meet the specifications set forth in the undertaking." 15 U.S.C.A. § 2301(6). Even if the powertrain warranty that defendant gave to plaintiff did not constitute an "affirmation of fact or written promise" that the "material [and] workmanship" of the covered parts were "defect free," it nonetheless constituted an "undertaking in writing ... by a supplier of a consumer product to refund, repair, replace, or take other remedial action ... in the event that such product fails to meet the specifications set forth in the undertaking." Therefore, plaintiff's claim under the Act did not accrue until defendant allegedly breached its obligation to repair the defect in plaintiff's engine timing belt.
This conclusion is supported by Cosman, discussed earlier in this opinion, which states:

*112 [T]he federal definition of "written warranty" under the Magnuson-Moss Act includes promises to repair within the concept of warranty....
....
A breach of the promise to repair cannot occur until Ford refuses or fails to repair the powertrain if and when it breaks.
....
Under this analysis plaintiffs should have the right to sue for a failure to repair at any time within the life of the warranty and within four years after the breach.
The result we reach here does the least violence to two legislative actsthe Uniform Commercial Code and the Magnuson-Moss Actdrafted without an eye on the other. It preserves a four year statute of limitations for promises that are part of a contract for the sale of goods, while recognizing that the Magnuson-Moss remedy for breach of a promise to repair cannot ripen until the promise is broken and has nothing to do with the inherent quality of the goods or their future performance.
[674 N.E.2d at 67-68.]
See also Keller v. Volkswagen of Am., Inc., 733 A.2d 642, 644 (Pa.Super.Ct.1999).
Accordingly, we affirm the dismissal of plaintiff's Lemon Law claim, but reverse the dismissal of his breach of warranty and Magnuson-Moss Act claims.
WELLS, J.A.D. (concurring).
I concur with both the result and reasoning of Parts I and III of the majority opinion. I also concur with the result in Part II. The majority reaches its result in that Part on either one of two alternate theories: one by a construction of the powertrain warranty as one for the future performance of the powertrain and thus not subject to the four year limitations period under N.J.S.A. 12A:2-725(2); and, one by a construction of the warranty simply as an independent "promise to repair defects in the powertrain", supra, 110. Under the latter view the power-train warranty is not one presently defined by the Uniform Commercial Code.
I write separately simply to express my view that it is on the second, and only the second, theory that the result should rest. I am convinced that the cases supporting that theory are better reasoned and better comport with the intent of the manufacturer of the car in question and, as well, the reasonable expectations of the consumer. In my view, the decision of another panel of this court, Docteroff v. Barra Corp. of Am., Inc., 282 N.J.Super. 230, 659 A.2d 948 (App.Div.1995), cited by the majority is distinguishable. The warranty there was far broader than the one here and did arguably guarantee the future performance of the roof involved there, thus bringing it within N.J.S.A. 12:2-725(2). That, in my opinion, is simply not true in the case of this much more narrowly worded warranty.
NOTES
[1] Even though some discovery had been conducted, neither party submitted any discovery materials to the trial court in connection with this motion. Instead, both parties relied upon their respective "statements of undisputed facts" and supporting exhibits, which consisted of the contract of sale and other purchase documents and bills for the repairs performed on plaintiff's car. As a result, the record before us contains only a skeletal presentation of the facts.
[2] Although the parties seem to assume that this date was the date of delivery of the car, we note that the warranty states that "[t]he `Powertrain Warranty' begins at the end of the `Basic Warranty' period." However, even if the term of the powertrain warranty began on the date of delivery, it is undisputed that all of the repairs and replacements of plaintiff's engine timing belt occurred while the warranty was in effect.
[3] Although the warranty states that defendant is obligated "to cover[] the cost of all parts and labor needed to repair" the vehicle, it also states "[e]xcept in emergencies, you MUST bring your vehicle to an authorized Chrysler Dealer for warranty services and repairs." Therefore, as a practical matter, defendant's obligation to cover the costs of repair is generally an obligation to perform the repairs.
[4] Compare Spring Motors Distribs., Inc. v. Ford Motor Co., 191 N.J.Super. 22, 47, 465 A.2d 530 (App.Div.1983) (holding that "the words `your vehicle has been designed to give long reliable service with the simplest and least costly maintenance requirements possible' do not make any explicit guarantee as to the vehicle's performance over or after a stated period of time"), rev'd on unrelated grounds, 98 N.J. 555, 489 A.2d 660 (1985).
[5] For a general discussion of the Act, see 1 James J. White and Robert S. Summers, Uniform Commercial Code (4th ed.1995) § 9-15.