74 A.3d 977

GENE FEDOR, PLAINTIFF–APPELLANT, v. NISSAN OF NORTH AMERICA, INC., DEFENDANT–RESPONDENT.

JINGESH GHANDI,[1] PLAINTIFF–APPELLANT, v. NISSAN OF NORTH AMERICA, INC., DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued April 30, 2013—Decided August 23, 2013.

---

[1] The Notice of Appeal and the trial court transcript caption used this spelling of appellant's name. However, the complaint and appellate brief spelled appellant's name as "Gandhi." We have chosen to use the former in our opinion.

304

Before Judges MESSANO,[2] LIHOTZ and OSTRER.

*Carl D. Poplar* argued the cause for appellants (*Kimmel & Silverman* and *Carl D. Poplar,* attorneys; *Fred Davis,* on the brief).

*Thomas J. Sateary* argued the cause for respondent (*Linda-bury, McCormick, Estabrook & Cooper, PC,* attorneys; *Mr. Sateary,* of counsel and on the brief; *Joshua S. Sklarin,* on the brief).

The opinion of the court was delivered by

LIHOTZ, J.A.D.

These back-to-back appeals, filed by separate plaintiffs against the same defendant and consolidated for purposes of this opinion, present the same legal issue for review. Plaintiffs, as aggrieved consumers of new automobiles, successfully pursued relief and were granted repurchase of their vehicles through the manufacturer's informal dispute settlement mechanism, established pursuant to the Magnuson–Moss Warranty—Federal Trade Commission Improvement Act (Magnuson–Moss Act), 15 *U.S.C.A.* §§ 2301 to 2312. We are asked to determine whether plaintiffs retain the right to file a separate action for payment of attorney's fees under the Magnuson–Moss Act or the New Jersey Motor Vehicle Warranty Act (Lemon Law), *N.J.S.A.* 56:12–29 to –49, notwithstanding the informal dispute settlement mechanism expressly excluded attorney fee awards.

Plaintiffs Gene Fedor and Jingesh Ghandi appeal from the entry of summary judgment in favor of defendant Nissan of North America, Inc., dismissing plaintiffs' complaints. On appeal, plaintiffs raise this issue of first impression, arguing the judge erred

---

[2] Judge Messano did not participate in oral argument. He joins the opinion with counsel's consent. *R.* 2:13–2(b).

because attorney's fees must be paid to a successful consumer as a matter of law. We disagree and affirm.

## I.

### A.

On January 10, 2009, Fedor purchased a new 2009 Nissan Quest from Windsor Nissan for $30,289.00. The vehicle was manufactured, distributed, and warranted by defendant. The warranty required dissatisfied consumers to file claims with BBB Auto Line, "a special automotive complaint resolution program ... independently operated by the Council of Better Business Bureaus, Inc. (BBB)." As described in the warranty booklet,

> BBB AUTO LINE is an informal dispute settlement mechanism operated to comply with applicable Federal law and regulations. In states where BBB AUTO LINE is available, you are required to use BBB AUTO LINE before exercising rights or seeking remedies under [the Magnuson–Moss Act]. If you choose to seek remedies other than those created by [the Magnuson–Moss Act], (for example, under state law), that Federal Act does not require you to first use BBB AUTO LINE. The program is still available to you, however, and may be of considerable assistance. Some states specify that informal dispute settlement mechanisms such as BBB AUTO LINE must be used before you may use state-operated complaint resolution processes, before you may file a lawsuit under state law, and/or before you may have certain other rights or remedies available under state law. In accordance with those states' laws, Nissan requires the prior use of BBB AUTO LINE in good faith before you resort to such other processes, file a lawsuit, or seek other remedies provided by state law.

The 2009 New Vehicle Limited Warranty, located in the warranty booklet, contained almost identical language, and also stated: "Nissan makes available to you, and you are specifically required by Federal Law to use BBB AUTO LINE ... before exercising rights or seeking remedies under the [Magnuson–Moss Act]." The warranty also makes clear that state law may not require consumers to first use Auto Line before pursuing state-created remedies. However, the warranty advised, "if you seek remedies created by state law, including your state's lemon law, if applicable state law provides for using a 703 compl[ai]nt or similar process before

filing suit[,]" then you must "first use BBB AUTO LINE in good faith[.]" [3]

Auto Line has its own set of rules and procedures, which are available on its website. The website explains Auto Line's "role . . . is to open communication between you and the manufacturer representative and to facilitate the speedy resolution of your auto warranty or lemon law dispute." BBB Auto Line's Process, Better Business Bureau, http://www.bbb.org/us/auto-line-lemon-laws/process-information (last visited July 25, 2013). A consumer pays nothing to participate in the Auto Line program, which consists of mediation and arbitration. First, in mediation, Auto Line attempts to assist the consumer in resolving the claimed vehicle problems. Second, if mediation is unsuccessful, the consumer has the opportunity to present the claims to an impartial arbitrator or three-person panel. In its review of a dispute, Auto Line incorporates the manufacturer's Program Summary, which delineates those claims eligible and ineligible for arbitration, as well as the available remedies. Neither the consumer nor Nissan is legally bound by the arbitrator's written decision unless accepted by the consumer.

In this matter, defendant's informal dispute resolution Program Summary states the arbitrator may award all available state lemon law remedies in the arbitration of a warranty claim seeking relief under a state's lemon law, "excluding attorney's fees, any penalties or multiple damages." A separate section of the manufacturer's program description, entitled "**CLAIMS THAT WILL NOT BE ARBITRATED[,]**" states "[c]laims seeking punitive damages or compensation for legal fees, loss of wages, personal injury or mental anguish" are not subject to Auto Line arbitration. The Program Summary further describes available relief and includes a detailed statement of each alternative remedy.

---

[3] A "703 complaint" refers to 16 *C.F.R.* § 703.5, a section of the Federal Trade Commission regulations promulgated to implement the Magnuson–Moss Act, discussed *infra*.

As a result of various, recurring problems encountered with his vehicle, all of which remained unresolved despite multiple warranty repair attempts, Fedor filed a three-count Law Division complaint against defendant on June 15, 2011. Fedor alleged violations of the Lemon Law, the Magnuson–Moss Act, and the Uniform Commercial Code (UCC). Following discovery, defendant moved to dismiss the Magnuson–Moss Act count based on Fedor's failure to utilize defendant's informal dispute settlement procedure through Auto Line, as required by the warranty.

Fedor objected, asserting the Auto Line program mandated by defendant's warranty did not comply with state and federal law because it failed to include an award of attorney's fees to a successful consumer. He maintained the court should deny defendant's motion. Alternatively, plaintiff suggested the Magnuson–Moss Act count of his complaint could be dismissed without prejudice, pending remand to defendant's informal dispute settlement procedure via Auto Line and, if plaintiff prevailed in that proceeding, the issue of counsel fees would be preserved for future review by the court.

Defendant's motion was supported by the certification of Valerie Smith, an Arbitration Specialist I employed by defendant. Addressing prior matters filed with Auto Line in New Jersey over the previous twelve months, Smith averred: "In every claim where a prevailing consumer was represented by counsel, resolution of the claim included a payment of attorney's fees by Nissan." Further, in its supporting brief, defendant insisted it in fact has paid and will continue to pay attorney's fees to successful plaintiffs utilizing the BBB Auto Line program. Prior to the court's ruling, the parties agreed to proceed before Auto Line and defendant withdrew its motion.

Fedor's warranty claims were submitted to Auto Line and arbitration was conducted on December 21, 2011. The arbitrator concluded Fedor was entitled to a repurchase of his vehicle. Fedor executed the "Acceptance or Rejection of decision" form, accepting the arbitrator's decision awarding a repurchase by

checking the provision of the agreement that states: "I ACCEPT THE ARBITRATION DECISION. I understand this means . . . I . . . will be legally bound, which means I give up any right to sue the business in court on any claim that has been resolved at the arbitration hearing, . . . unless otherwise provided by state or federal law."

Notwithstanding his acceptance of the arbitration decision and its accompanying terms, Fedor insisted he remained statutorily entitled to an award of attorney's fees. First he requested a fee-shifting hearing through defendant's Auto Line program, but defendant declined to participate. Next, he sought judicial redress under his previously-filed complaint and the matter proceeded through non-binding, court-ordered arbitration, pursuant to *Rule* 4:21A–1. The arbitrator ruled in favor of defendant, finding fees were neither authorized under the informal dispute resolution program nor mandated as a matter of law. Fedor filed a demand for trial de novo.

Defendant moved for summary judgment, which was met by Fedor's cross-motion for statutory fees and costs pursuant to *N.J.S.A.* 56:12–36(d)(4) and 15 *U.S.C.A.* § 2310(d)(2). Following oral argument, the judge granted defendant's motion and denied Fedor's cross-motion. Fedor's subsequent request for reconsideration was denied. This appeal followed.

## B.

The facts surrounding Ghandi's appeal are similar to those described with respect to Fedor's action. Ghandi purchased a new 2011 Infiniti EX–35 from Salerno Duane Infiniti for $35,550.00. The vehicle was manufactured, distributed, and warranted by defendant. The warranty was identical to the warranty discussed above, including the provisions directing consumers to file claims with Auto Line. After he encountered various and recurring problems, which were not effectively repaired by defendant's authorized dealer, Ghandi filed a three-count Law Division complaint, raising the same causes of action asserted by Fedor.

Arbitration was conducted by Auto Line, and the arbitrator concluded Ghandi was entitled to a repurchase of his vehicle. Ghandi executed an acceptance of the arbitrator's award, acknowledging he would be "legally bound, [thereby] giv[ing] up any right to sue the business in court on any claim that has been resolved at the arbitration hearing, ... unless otherwise provided by state or federal law."

Thereafter, Ghandi requested a fee-shifting hearing before the Auto Line arbitrator, which was declined. The matter returned to the Law Division and proceeded to non-binding court-ordered arbitration, pursuant to *Rule* 4:21A–1.[4] Unlike Fedor's case, the arbitrator ruled in favor of Ghandi, awarding fees. Defendant timely demanded a trial de novo, and subsequently moved for summary judgment. Ghandi opposed the motion and filed a cross-motion for statutory fees and costs pursuant to *N.J.S.A.* 56:12–36(d)(4) and 15 *U.S.C.A.* § 2310(d)(2). A different Law Division judge considered the arguments, granting defendant's motion and denying Ghandi's cross-motion. Ghandi's timely appeal ensued.

Although Fedor's and Ghandi's actions are separate, they raise the same legal issues for our consideration. For ease in our discussion, we will refer to Fedor and Ghandi collectively as plaintiffs.

## II.

On appeal, plaintiffs argue the trial judge erred in granting summary judgment. Plaintiffs contend the court "undervalu[ed] strong policy interests served by fee-shifting at informal dispute settlement procedures," and incorrectly allowed defendant's "warranty dispute settlement procedure [to be] exempt from the requirements of [the Lemon Law.]" Further, plaintiffs argue the

---

[4] Email communication between defendant and Ghandi's counsel addressed possible settlement of the warranty dispute, including payment of attorney's fees. Defendant acknowledged it accepts and pays a pre-litigation, fixed fee award; however, the BBB Auto Line procedure was to be utilized before filing suit.

court erred in concluding there was no state cause of action allowing fee-shifting "for consumers [who] prevailed at an informal dispute settlement procedure under [the Magnuson–Moss Act.]" Plaintiffs seek reversal of the summary judgment dismissals of their complaints and an order reinstating their claims for attorney's fees and costs.

## A.

In reviewing a grant of summary judgment, we apply the same standard as the motion judge. *EMC Mortg. Corp. v. Chaudhri,* 400 *N.J.Super.* 126, 136, 946 *A.*2d 578 (App.Div.2008) (citing *Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A.,* 189 *N.J.* 436, 445–46, 916 *A.*2d 440 (2007)). We first determine whether the moving party has demonstrated there were no genuine disputes as to material facts. *Atl. Mut. Ins. Co. v. Hillside Bottling Co.,* 387 *N.J.Super.* 224, 230, 903 *A.*2d 513 (App.Div.) (citing *Brill v. Guardian Life Ins. Co. of Am.,* 142 *N.J.* 520, 540, 666 *A.*2d 146 (1995)), *certif. denied,* 189 *N.J.* 104, 912 *A.*2d 1264 (2006). *See also R.* 4:46–2(c) (entitling moving party to judgment as a matter of law "if the pleadings ... show that there is no genuine issue as to any material fact challenged"). We then decide "whether the motion judge's application of the law was correct." *Atl. Mut. Ins. Co., supra,* 387 *N.J.Super.* at 231, 903 *A.*2d 513. In doing so, we owe no deference to the motion judge's conclusions on legal issues, which we review de novo. *Ibid.* (citing *Manalapan Realty, L.P. v. Twp. Comm. of Manalapan,* 140 *N.J.* 366, 378, 658 *A.*2d 1230 (1995)).

## B.

The Magnuson–Moss Act was enacted in 1975 in response to infuriated motor vehicle owners complaining "automobile manufacturers and dealers were not performing in accordance with the warranties on their automobiles." *Ryan v. Am. Honda Motor Co.,* 186 *N.J.* 431, 433, 896 *A.*2d 454 (2006) (internal quotation marks omitted). Congress intended the legislation to aid consumers by

ensuring significant guarantees of quality and performance of warranty provisions for purchased consumer goods, and "to improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products[.]" 15 *U.S.C.A.* § 2302(a). The statute imposes "[f]ederal minimum standards[,]" listing specific obligations applicable to all product warranties. *Id.* § 2304(a). *See also Poli v. Daimler-Chrysler Corp.*, 349 *N.J.Super.* 169, 180, 793 *A.*2d 104 (App.Div. 2002). For example, suppliers who choose to issue an optional written warranty must provide the promised repairs within a reasonable time and without charge, replace the car, or provide a refund. 15 *U.S.C.A.* § 2304(a)(1), (4). Further, the Magnuson–Moss Act requires manufacturers warranting a product to "fully and conspicuously disclose" the terms of coverage "in simple and readily understood language." *Id.* § 2302(a). *See also Ryan, supra*, 186 *N.J.* at 433–34, 896 *A.*2d 454. The statute also provides a cause of action and legal remedy for consumers harmed by a warrantor's failure to comply with its warranty obligations. 15 *U.S.C.A.* § 2310(d). *See also Poli, supra*, 349 *N.J.Super.* at 180–81, 793 *A.*2d 104.

In addition to its goal of elucidating consumer product warranties, Congress also set out to advance its avowed "policy to encourage warrantors to establish procedures whereby consumer disputes [could be] fairly and expeditiously settled through informal dispute settlement mechanisms." 15 *U.S.C.A.* § 2310(a)(1). To accomplish the objective of making available an effective, quick remedy at little or no cost to the consumer, Congress directed the Federal Trade Commission (FTC) to "prescribe rules setting forth minimum requirements for any informal dispute settlement procedure which is incorporated into the terms of a written warranty to which any provision of this chapter applies." *Id.* § 2310(a)(2).

### C.

The Magnuson–Moss Act apparently was not successful in resolving consumer disputes regarding chronically defective auto-

mobiles. Consequently, many states enacted legislation to address perceived problems. New Jersey's Lemon Law establishes the rights and duties of manufacturers, dealers, and consumers regarding the repair and return of defective motor vehicles. *N.J.S.A.* 56:12–29 to –49. The Lemon Law is designed to ease consumer efforts to obtain rectification of new automobile defects, as "the purchase of a new motor vehicle is a major, high cost consumer transaction and the inability to correct defects in these vehicles creates a major hardship and an unacceptable economic burden on the consumer." *N.J.S.A.* 56:12–29. The law's three-fold purpose is to: (1) "require the manufacturer of a new motor vehicle ... to correct defects originally covered under warranty which are identified and reported within a specified period"; (2) "provide procedures to expeditiously resolve disputes between a consumer and a manufacturer ... when defects in a new motor vehicle are not corrected within a reasonable time"; and (3) "provide to award specific remedies where the uncorrected defect substantially impairs the use, value, or safety of the new motor vehicle." *Ibid.*

To effectuate these objectives, the statute imposes an affirmative obligation upon the vehicle manufacturer to repair substantial defects within a reasonable time. *N.J.S.A.* 56:12–31. *See also DiVigenze v. Chrysler Corp.*, 345 *N.J.Super.* 314, 323, 785 *A.*2d 37 (App.Div.2001), *certif. denied*, 171 *N.J.* 442, 794 *A.*2d 181 (2002). "If the manufacturer is unable to repair the vehicle within the statutory timeframe, the consumer is entitled to a full refund of the purchase price of the vehicle in addition to 'any other charges or fees' associated with the ownership of the vehicle." *Thiedemann v. Mercedes–Benz USA, LLC*, 183 *N.J.* 234, 254, 872 *A.*2d 783 (2005) (quoting *N.J.S.A.* 56:12–32). The manufacturer may offer to replace the vehicle in lieu of a refund, but the consumer is free to reject such offer and demand a refund. *N.J.S.A.* 56:12–32a. The vast majority of Lemon Law litigation relates to alleged non-compliance with these requirements.

To assert a claim under the Lemon Law, a plaintiff must report the claimed motor vehicle nonconformity to the manufacturer or its dealer within the earlier of the first 24,000 miles of operation or two years following the date of delivery of the vehicle. *N.J.S.A.* 56:12–31. If "the manufacturer ... or its dealer or distributor [ ] is unable to repair or correct the nonconformity within a reasonable time," a plaintiff is entitled to return the vehicle to the manufacturer and receive "a full refund of the purchase price," along with any other charges or fees associated with the vehicle's ownership, "less a reasonable allowance for vehicle use." *N.J.S.A.* 56:12–32a.[5] *See Poli, supra,* 349 *N.J.Super.* at 173–74, 793 *A.2d* 104. A consumer meets this burden "by producing evidence that the nonconformity 'continues to exist' after the specified number of repairs or time out of service." *DiVigenze, supra,* 345 *N.J.Super.* at 324, 785 *A.2d* 37 (quoting *N.J.S.A.* 56:12–33a, –33b). *See N.J.S.A.* 56:12–33a(1) (presuming the manufacturer "is unable to repair or correct a nonconformity within a reasonable time if, within the first 24,000 miles of operation or during the period of two years following the date of original delivery ... [,] [s]ubstantially the same nonconformity has been subject to repair three or more times ... and the nonconformity continues to exist").

### D.

Plaintiffs' appeals also require review of the treatment of informal dispute settlement mechanisms, addressed in both the Magnuson–Moss Act and the Lemon Law. Further, we consider the statutory provisions regarding an award of counsel fees to a successful claimant.

### 1.

As we noted, under the Magnuson–Moss Act, Congress expressly "declare[d] it to be its policy to encourage warrantors to

---

[5] Following the report of a nonconformity to the manufacturer, "[t]he manufacturer then has three attempts or a cumulative total of 20 calendar days, whichever occurs first, to repair the nonconforming vehicle." *See Thiedemann, supra,* 183 *N.J.* at 254, 872 *A.2d* 783 (citing *N.J.S.A.* 56:12–33).

establish procedures whereby consumer disputes are fairly and expeditiously settled through informal dispute settlement mechanisms." 15 *U.S.C.A.* § 2310(a)(1). The procedures for participation in an informal dispute settlement mechanism must be set forth in the written consumer warranty and comply with requirements promulgated by the FTC. *Id.* § 2310(a)(2). We note Auto Line is an example of such a mechanism organized in compliance with these FTC procedures.

If a warrantor establishes an informal dispute settlement procedure, compliant with the FTC rules, and incorporates a written warranty provision mandating "the consumer resort to such procedure before pursuing any legal remedy under this section respecting such warranty, then ... the consumer may not commence a civil action ... unless he initially resorts to such procedure[.]" *Id.* § 2310(a)(3)(C).[6]

State courts exercise concurrent jurisdiction with the federal courts over Magnuson–Moss Act cases, though federal court jurisdiction is restricted to those suits satisfying the $50,000 amount-in-controversy requirement set forth in 15 *U.S.C.A.* § 2310(d)(3). Thus, an aggrieved consumer may file an action in state court to recover damages for failure to comply with the Magnuson–Moss Act or the terms of the written warranty. *Id.* § 2310(d)(1)(A).

Subsection (d) of section 2310 of the statute outlines the parameters of legal action:

(1) Subject to subsections (a)(3) [governing informal dispute settlement mechanisms] ..., a consumer who is damaged by the failure of a ... warrantor .. to comply with any obligation under this chapter [15 *U.S.C.A.* §§ 2301 to 2312], or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief—

(A) in any court of competent jurisdiction in any State ...;

---

6 Under the Magnuson–Moss Act, " 'warrantors are not precluded from offering a binding arbitration option to consumers after a warranty dispute has arisen.' " *Davis v. S. Energy Homes, Inc.,* 305 *F.*3d 1268, 1280 n. 8 (11th Cir.2002) (quoting 64 *Fed. Reg.* 19700, 19708 (Apr. 22, 1999) (citing 40 *Fed. Reg.* 60168, 60211 (1975))), *cert. denied,* 538 *U.S.* 945, 123 *S.Ct.* 1633, 155 *L.Ed.*2d 486 (2003).

. . . .

(2) If a consumer finally prevails in any action brought under paragraph (1) of this subsection, he may be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of cost and expenses (including attorneys' fees based on actual time expended) determined by the court to have been reasonably incurred by the plaintiff for or in connection with the commencement and prosecution of such action, unless the court in its discretion shall determine that such an award of attorneys' fees would be inappropriate.

The FTC Informal Dispute Settlement Procedures Rule, 16 *C.F.R.* § 703 (2013) (*Rule* 703), sets forth requirements for the organization of informal dispute settlement mechanisms, *id.* § 703.3, arbitrator qualifications, *id.* § 703.4, mechanism operation, *id.* § 703.5, recordkeeping, *id.* § 703.6, audits, *id.* § 703.7, and openness of records and proceedings, *id.* § 703.8. *Rule* 703 governs the mechanism procedures to be followed as well as the procedures utilized when a settlement is not reached. In the latter instance, the mechanism must, within forty days, issue a "fair decision" based on all information gathered or presented. *Id.* § 703.5(d)(1). "A decision shall include any remedies appropriate under the circumstances, including repair, replacement, refund, reimbursement for expenses, compensation for damages, and any other remedies available under the written warranty or the Act (or rules there under)[.]" *Ibid.*

The regulations also reinforce the fact that although a warrantor may require a consumer to first pursue relief through the mechanism it creates, the informal dispute resolution mechanism's decisions are not legally binding, *id.* § 703.5(j), allowing a dissatisfied consumer to pursue all available state and federal "legal remedies," *id.* § 703.5(g)(1).

### 2.

New Jersey's Lemon Law identifies three forums to "effectively resolve disputes between a consumer and a manufacturer" when vehicle nonconformities are not corrected within a reasonable time and no refund or replacement is tendered. *DiVigenze, supra,* 345 *N.J.Super.* at 324, 785 *A.2d* 37. The three forums are: (1) a summary dispute resolution procedure established within the Division of Consumer Affairs (Division), *N.J.S.A.* 56:12–37, in what is

known as the Lemon Law Unit, *N.J.A.C.* 13:45A–26.4; (2) a Superior Court action, *N.J.S.A.* 56:12–39; and (3) a manufacturer's informal dispute resolution procedure, if one is established, *N.J.S.A.* 56:12–36. *DiVigenze, supra,* 345 *N.J.Super.* at 324, 785 *A.*2d 37.

The Lemon Law specifically references the informal dispute settlement procedures offered by the manufacturers pursuant to the Magnuson–Moss Act. *See N.J.S.A.* 56:12–36. The statute provides in pertinent part:

a. If a manufacturer ... has established, or participates in, an informal dispute settlement procedure pursuant to [15 *U.S.C.A.* § 2310] and the rules promulgated thereunder, *or the requirements of this section,* a consumer may submit a dispute regarding motor vehicle nonconformities ... to the dispute settlement body provided by that procedure, but a consumer shall not be required to first participate in the informal dispute settlement procedure before participating in the [D]ivision's summary hearing procedure under this act.

b. If a consumer chooses to use a manufacturer's ... informal dispute settlement procedure established pursuant to this section, the findings and decisions of the dispute settlement body shall state in writing whether the consumer is entitled to a refund ... and the findings and decisions shall be admissible ... in any legal action.

c. If the dispute settlement body determines that a consumer is entitled to relief under this act, the consumer shall be entitled to a refund as authorized by [*N.J.S.A.* 56:12–32].

d. In any informal dispute settlement procedure established *pursuant to this section:*

. . . .

(4) ... If the dispute settlement body rules in favor of the consumer, his costs and reasonable attorney's fees shall also be awarded.

. . . .

e. Any manufacturer . . who establishes, or participates in, an informal dispute settlement procedure, whether it meets the requirements of this section or not, shall maintain, and forward to the director at six-month intervals, [certain enumerated records.]

[*Ibid.* (emphasis added).]

Under *N.J.S.A.* 56:12–39, an aggrieved consumer is not required to participate in a manufacturer's informal dispute settlement procedure or the Division's summary hearing procedure before filing an action in the Superior Court. Further, *N.J.S.A.* 56:12–37 grants a consumer the option of submitting any dispute to the

Division for resolution in the first instance. Again, the consumer cannot be required to first participate in the Division's summary administrative proceeding; however, if a consumer chooses this course of redress, it is binding, subject only to the right of appeal. *N.J.S.A.* 56:12–39. A consumer "shall be awarded reasonable attorney's fees" under the Lemon Law if he or she is successful in an action brought in the Superior Court or a summary proceeding before the Division. *N.J.S.A.* 56:12–42.

Having outlined the parameters of the available statutory relief, we now turn to plaintiffs' arguments advanced on appeal.

## III.

Plaintiffs argue the use of a manufacturer's informal dispute resolution mechanism cannot prevent or preclude an award of attorney's fees, a remedy allowed under both the Magnuson–Moss Act and the Lemon Law. They maintain the Law Division ignored "strong policy interests served by fee-shifting[.]" Further, they argue use of the Auto Line informal dispute settlement mechanism does not obviate application of 15 *U.S.C.A.* § 2310(d)(2), which, according to plaintiffs, "provides a separate state court cause of action for fee-shifting" and may not preclude an award of attorney's fees. More specifically, plaintiffs contend "any informal dispute settlement procedure which alleges compliance with the [Magnuson–Moss] Act must include fee[-]shifting," and plaintiffs' rights should not be lessened because they accepted relief in an arbitral forum.

Following our review, we reject plaintiffs' assertion that a warrantor's informal dispute resolution mechanism adopted under the Magnuson–Moss Act, such as Auto Line, is required to include a fee-shifting component for successful consumers. We conclude the statute and regulations promulgated thereunder provide otherwise. Further, we discern no support for the suggestion that attorney's fees may be recovered under the Lemon Law by a consumer who elects to accept relief awarded through a manufac-

turer's informal dispute resolution mechanism created pursuant to the Magnuson–Moss Act and *Rule* 703.

### A.

Plaintiffs attempt to find support for their argument that fees must be awarded by relying on the parenthetical provision of 16 *C.F.R.* § 703.5(d)(1), which states: "A decision shall include any remedies appropriate under the circumstances, including repair, replacement, refund, reimbursement for expenses, compensation for damages, and any other remedies available under the written warranty or the Act (or rules thereunder); and a decision shall state a specified reasonable time for performance[.]" However, the argument ignores that defendant's warranty and its informal dispute resolution mechanism excluded attorney fee awards, a circumstance authorized by the Magnuson–Moss Act.

This straightforward interpretation is consistent with the FTC's own interpretation, which it discussed in an October 2005 letter containing an informal advisory opinion regarding the BBB Auto Line program. *See Unpublished Informal Advisory Opinion of Federal Trade Commission Staff re: Informal Dispute Settlement Procedure in 16 C.F.R. 703,* Letter from FTC Acting Associate Director (October 25, 2005). The FTC was requested to provide an advisory opinion interpreting 16 *C.F.R.* § 703.5(d)(1),

> to address an argument frequently asserted by plaintiffs' lawyers seeking to circumvent the AUTO LINE program and instead immediately file a warranty suit in court. According to this argument, the AUTO LINE program does not comply with [*Rule* 703] because the program is not empowered to award all remedies that might be awarded in a lawsuit for breach of warranty [.]
>
> [*FTC Staff Advisory Opinion, supra.*]

One of these omitted remedies is an award of attorney's fees.

The FTC concluded "Rule 703 does not require that all remedies that a court might award a plaintiff who prevails in a warranty lawsuit must be within the power of an [informal dispute settlement mechanism] decision maker." *Ibid.* The FTC emphasized an informal dispute settlement mechanism, "operating as a prerequisite to (but not a substitute for) legal action[,]" does not

need to award attorney's fees to be fully compliant with the Magnuson–Moss Act and *Rule* 703, as the objective is informal settlement of the dispute. *Ibid.* " 'Congress envisioned [the informal dispute settlement mechanisms] as a warrantor's opportunity to cure a possible breach of warranty' " and avoid litigation. *Ibid.* (quoting *Informal Dispute Settlement Mechanisms,* 40 *Fed. Reg.* 60190 (proposed Dec. 31, 1975) (to be codified at 16 *C.F.R.* pt. 703)). Accordingly, the FTC concluded the Magnuson–Moss Act "does [n]ot [c]ontemplate the [a]ward of [a]ttorneys' [f]ees or [c]osts" by informal dispute settlement mechanisms; such remedies are only available to consumers who prevail in an action before the court. *Ibid.*

■ We give substantial deference to an agency's interpretation of the statute it is charged with carrying out, as well as to the interpretation the agency itself gives to its own regulations. *DiVigenze, supra,* 345 *N.J.Super.* at 330, 785 *A.2d* 37 (citations omitted). *See also N.J. Guild of Hearing Aid Dispensers v. Long,* 75 *N.J.* 544, 575, 384 *A.2d* 795 (1978) ("It is a fundamental maxim that the opinion as to the construction of a regulatory statute of the expert administrative agency charged with the enforcement of that statute is entitled to great weight and is a substantial factor to be considered in construing the statute." (internal quotation marks and citations omitted)). Moreover, an agency's opinion letter "has been accorded the status of an official administrative interpretation for purposes of judicial deference thereto." *Long, supra,* 75 *N.J.* at 576, 384 *A.2d* 795 (citations omitted).

Plaintiffs' policy arguments—maintaining that to allow informal dispute resolution mechanisms to deny attorney fee awards to prevailing parties does and will continue to cause consumers to reject these forums in favor of judicial redress—ignores the benefits provided by alternative dispute resolution forums, including: there are no filing fees or costs for the consumer to initiate use of the mechanism, 16 *C.F.R.* § 703.3(a); legal representation is not required and the proceedings are tailored to self-represented consumers; an independent expert inspects the vehicle and all

records of complaints, at no cost to the consumer; decisions are swiftly made, unburdened by the formality of court process, *id.* § 703.5(d); and the result is non-binding, thus ensuring a dissatisfied consumer retains the ability to initiate full judicial review, *id.* § 703.5(g)(1), (j).

Examining the BBB Auto Line program's website, we note the motto epitomizing these attributes, stated in bold letters, "**Fast. Free. Fair.**" BBB Auto Line, Better Business Bureau, http://www.bbb.org/us/auto-line-lemon-law (last visited July 25, 2013). The terms of participation in the Auto Line program are clearly expressed and emphasize the objective of facilitating communication between consumers and warrantors to assure compliance with warranty provisions. It is undisputed that this forum excludes other claims possibly held by the consumer, including a demand for attorney's fees.

In this light, we conclude Congress established procedures for and encouraged the creation of informal dispute resolution mechanisms by warrantors to give consumers quick, yet effective, relief, without requiring these mechanisms to mimic legal redress. The absence of an attorney fee award neither violates the statute and its regulations nor offends public policy. Use of informal dispute resolution mechanisms was a compromise between consumers and warrantors. As noted, use of Auto Line was required prior to filing suit under the Magnusson–Moss Act, but was not a prerequisite to an action under the Lemon Law. Plaintiffs elected to use the warranty-provided informal dispute resolution program conducted by Auto Line, knowing it expressly stated attorney's fees are not awarded. Plaintiffs also accepted the Auto Line award granting repurchase of the defective vehicles, knowing that by doing so they agreed to forego the opportunity to file suit.

Here, plaintiffs were free to reject the Auto Line award and proceed with a private right of action for breach of warranty in the hope of obtaining additional relief, including attorney's fees. However, by electing to accept the informal dispute settlement

determination of repurchase, they have waived all further remedies under the Magnuson–Moss Act.

### B.

■ Plaintiffs also argue the Lemon Law "imposes a non-waivable fee[-]shifting requirement on informal dispute settlement procedures." Citing *N.J.S.A.* 56:12–36a and –36d(4), plaintiffs reason the Lemon Law incorporates the informal dispute settlement procedures of the Magnuson–Moss Act as minimum standards and requires fee-shifting. We reject this argument, as it too ignores the plain language of the statute.

*N.J.S.A.* 56:12–36a addresses a manufacturer's informal dispute settlement procedure established pursuant to the Magnuson–Moss Act and *Rule* 703, and does not preclude a consumer's participation in such a program. Subsection b alternatively addresses informal dispute settlement programs "established pursuant to this section" of the Lemon Law. This makes clear the two are not one and the same.

Following the well-settled rules of statutory construction, we examine "the plain language of the statute, which is typically the best indicator of intent," and give the words used "their ordinary, generally accepted meaning." *In re Plan for the Abolition of the Council on Affordable Hous.*, 214 *N.J.* 444, 467, 70 *A.*3d 559, 2013 *WL* 3717751 (2013) (citations omitted). *See also N.J.S.A.* 1:1–1. We note the specific use of two distinct provisions to discuss informal dispute resolution programs, *N.J.S.A.* 56:12–36a and –36b, reflects the Legislature's recognition of two separate informal dispute settlement forums: those established pursuant to the Magnuson–Moss Act, and those designed to comply with the Lemon Law. The conclusion is further reinforced by the language of other sections of the statute.

*N.J.S.A.* 56:12–36d includes qualifying language describing "any informal dispute settlement procedure *established pursuant to this section*" (emphasis added). Subsection e imposes record retention requirements on all manufacturers who establish an

informal dispute resolution procedure, "whether it meets the requirements of this section or not[.]" The inescapable conclusion from these references is the Lemon Law calls for an informal dispute settlement procedure that may be separate and distinct from those established pursuant to the Magnuson–Moss Act.

If an informal dispute resolution program is established by a manufacturer under *N.J.S.A.* 56:12–36 of the Lemon Law, the settlement body must consider an award of attorney's fees to a successful consumer. *N.J.S.A.* 56:12–36d(4). However, the Lemon Law does not impose a universal requirement for a fee award in any other informal dispute resolution programs, including those established under the Magnuson–Moss Act. Rather, the only relief to which all successful consumers are entitled, mandated by *N.J.S.A.* 56:12–36c where the consumer is found to be entitled to relief under the Lemon Law, is "a refund as authorized by section 4 [*N.J.S.A.* 56:12–32] of this act."

Here, BBB Auto Line was not created under the Lemon Law. Rather, it was established pursuant to the Magnuson–Moss Act. The use of its own internal rules and procedures, including those regarding the exclusion of certain claims, is acceptable and fully compliant with *Rule* 703.

Plaintiffs contend if the Lemon Law provides for attorney's fees in some circumstances, such as administrative proceedings before the Division, *N.J.S.A.* 56:12–42, Superior Court actions, *ibid.,* and informal dispute settlement procedures established under the Lemon Law, *N.J.S.A.* 56:12–36d, then attorney's fees must be available under all circumstances, including resolution by an informal dispute settlement mechanism established pursuant to the Magnuson–Moss Act. Plaintiffs assert the manufacturer's informal dispute resolution mechanism "must still comply with and offer remedies afforded by the host state's lemon laws." We reject this proposition as unfounded.

Plaintiffs do not offer and we are unaware of any authority suggesting New Jersey's Lemon Law, as a matter of public policy, intended to allow an award of attorney's fees to all consumers

utilizing any manufacturer's informal dispute settlement procedure, even one established pursuant to the Magnuson–Moss Act. This assertion lacks statutory, regulatory, judicial, and legislative history support.

We further note, New Jersey's Lemon Law does not impose upon all manufacturers who offer an informal dispute resolution mechanism a requirement to comply with the State's Lemon Law. *Contra*, 1986 *N.Y. Laws*, ch. 799 (amending various subsections of New York's lemon law, GBL § 198–a, particularly subsection (g), to provide if a manufacturer adopts an informal dispute resolution mechanism, it must, at a minimum, comply with the New York state lemon law, as well as FTC regulations). While a state is free to implement a lemon law requiring all informal dispute settlement procedures, including those established pursuant to the Magnuson–Moss Act, to comply with additional requirements imposed by state law, such as fee-shifting, New Jersey's Legislature has not done so.

We make this final observation. The Magnuson–Moss Act and the Lemon Law are aimed at addressing the types of manufacturing defects experienced by plaintiffs. The procedures are well-explained in the statutes and regulations. In this matter, additional, very clear instructions governing the BBB Auto Line program were provided. Plaintiffs were aware Auto Line would not address attorney's fees (unless otherwise agreed between the manufacturer and the consumer) and they did not reach an agreement with defendant as to any provision for fee payment. The Auto Line award was rendered, addressing plaintiffs' grievances, and in both cases requiring repurchase of the defective vehicles. Plaintiffs accepted the award, knowing it was final and did not provide for an award of fees.

We reject plaintiffs' suggestion that failure to award fees in every instance will encourage and increase litigation. The Lemon Law defines the remedies available to consumers proceeding under the various forums available for purposes of seeking redress. Each has its own respective benefits and burdens. Cer-

tainly the statute, like its federal counterpart, presents mechanisms for negotiation and conciliation between consumers and manufacturers. The FTC's 2005 opinion letter described the *Rule 703* procedures, stating they essentially "included a 'stick'—a newly available [consumer private right of action] with attorneys' fees—and a 'carrot'—a last chance opportunity to cure a warranty breach before being subjected to such damages and attorneys' fees." *FTC Staff Advisory Opinion, supra.* Plaintiffs' route to resolve their issues relating to vehicle defects was expeditious and with little cost. Their execution of the acceptance of the awards demonstrates their choice of and satisfaction with the forum. Even though plaintiffs were not bound to accept the informal dispute settlement decision, neither rejected the award of repurchase in favor of initiating legal action in the hope of also collecting attorney's fees.

## IV.

We may not ignore the careful language of the Legislature and Congress in crafting the informal dispute resolution mechanism provisions under the Lemon Law and Magnuson–Moss Act, respectively. In the absence of statutory authorization, general policy arguments advanced by consumers in favor of fee-shifting may not be a basis for this court's ruling. These arguments need be directed to the Legislature. *See Murray v. Plainfield Rescue Squad,* 210 *N.J.* 581, 592, 46 *A.*3d 1262 (2012) (noting the courts are not to rewrite a plainly written statute, nor presume the Legislature meant something other than what is conveyed by the clearly expressed language). In each matter, the Law Division's grant of summary judgment and denial of reconsideration will not be disturbed.

Affirmed.